GRIES, d/b/a Home Fashion Mart Company, and another, Appellants, v. FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Respondent.

*No. 75–859. Submitted on briefs March 8, 1978.—*
*Decided April 5, 1978.*
(Also reported in 264 N.W.2d 254.)

For the appellants the cause was submitted on the brief of *William P. McGovern* of Oak Creek.

For the respondent the cause was submitted on the brief of *Robert A. Christensen,* and *Foley & Lardner* of Milwaukee.

CONNOR T. HANSEN, J.  The plaintiffs had developed a small "home party plan" business for the sale of fabrics. This plan involved the presentation and sale of fabrics to small groups of women gathered in private homes at the invitation of the home occupants.

In late 1970, the plaintiffs decided to seek a loan to buy additional fabrics and to hire additional employees to expand their "home party plan" business. They presented their plan to two banks without success.

Mr. Gries then arranged to meet Walter Fiorentini, the manager of a branch of the First Wisconsin National Bank of Milwaukee. In his capacity as an alderman of the city of Oak Creek, Gries had previously met Fiorentini. The plaintiffs met with Fiorentini in March, 1971, and described their proposed party plan business. They discussed the possibility of obtaining a Small Business Administration (SBA) guaranteed loan. At a second meeting shortly thereafter, Fiorentini informed the plaintiffs that an SBA loan would not be available for a party plan business. Fiorentini stated that the SBA would, however, back a retail business.

The plaintiffs then drew up a proposal for a retail fabric store. They projected annual sales of $118,800, costs of $50,200, and operating expenses of $34,450, including selling expenses of $18,750, and general expenses of $15,700. When Fiorentini was advised that Mrs. Gries had no experience in retail sales, he told her that she would have to employ an experienced manager, and the selling expenses therefore included $10,000 for a manager's salary.

Mrs. Gries testified that Fiorentini told them "the people downtown" were against the loan. However, Fiorentini told them he had authority, as branch manager, to approve loans up to $50,000, and that he would approve the loan in his capacity as branch manager. The loan transaction was concluded July 20, 1971, and the plaintiffs signed a note for $44,000, secured by a second mortgage on their home.

Mr. Gries testified that the First Wisconsin National Bank of Milwaukee was interested in becoming the depository of the general funds of the city of Oak Creek, which had a running balance of approximately one million dollars and an annual budget of over six million dollars. Gries testified that, in their many meetings, Fiorentini would talk about politics and inquire about the feelings of Gries' fellow aldermen as to the choice of a bank as depository for the city's funds.

A manager was employed for the business, and it opened August 1, 1971, and closed on December 31, 1973. Mrs. Gries performed manual labor in the store, but drew no salary, and worked part time at night as a nurse to supplement the family income. The business was a losing operation from the time it began. The plaintiffs borrowed an additional $6,700 from the bank in an effort to make the business succeed, but these efforts proved futile. However, their $44,000 loan was repaid in full. At trial, the plaintiffs called three witnesses: the plaintiffs themselves, and their accountant.

The appeal presents the single question whether, on the facts stated, the trial court erred in granting the defendant's motions for nonsuit and dismissal of the action.

A motion for nonsuit or for dismissal will not be granted if, under any reasonable view of the credible evidence and the inferences therefrom, the jury could

find for the plaintiffs. If a jury could disagree on the facts or the inferences to be drawn from the facts, the motion must be denied and the ultimate facts determined by the jury. Sec. 805.14(1), Stats.; *Nelson v. Travelers Ins. Co.,* 80 Wis.2d 272, 278, 259 N.W.2d 48 (1977); *Household Utilities Inc. v. Andrews Co.,* 71 Wis.2d 17, 24, 236 N.W.2d 663 (1976).

In determining whether the defendant's motions should have been granted, this court must view the evidence in the light most favorable to the plaintiff. Sec. 805.14(1), Stats.; *Nolden v. Mutual Benefit Life Ins. Co.,* 80 Wis.2d 353, 358, 359, 259 N.W.2d 75 (1977).

The essence of the plaintiffs' contention is that the bank was negligent to have loaned them the money which it did in the manner in which it did and therefore breached a duty it owed to the plaintiffs.

The plaintiffs do not explicitly identify the standard of care which they contend must be exercised by a bank in the position of the defendant; they state only that the bank owed them "a duty . . . not to be negligent." Presumably, this duty involves both the financial advice given to the plaintiffs by the bank and the bank's ultimate decision to approve the loan on certain conditions. The unstated argument appears to be that in offering financial advice and in reviewing loan applications, a financial institution must exercise that degree of care and skill which an ordinarily prudent financial institution would exercise under the circumstances. If this standard is not met, the argument appears to be, the financial institution will be liable to a borrower for any damages he suffers in the business undertaken with the loan proceeds.

The plaintiffs identify no authority which supports this proposition. They rely on this court's decision in *Schweiger v. Loewi & Co., Incorporated,* 65 Wis.2d 56, 221 N.W.2d 882 (1974). That decision is readily distinguishable.

In *Schweiger, supra,* a purchaser of stock commenced a suit against an investment brokerage house to recover damages allegedly caused by the brokerage house's handling of his investment account. A demurrer to the complaint was overruled by the trial court, and this court affirmed. This court held that the complaint stated causes of action on two alternative theories.

First, it alleged misrepresentation. Specifically, the complaint alleged that the defendant had represented that it had unique expertise in investment counseling, and that it had unique "inside" information regarding a particular security because it held shares of the security and was represented on the board of directors.

With regard to alleging this cause of action, this court stated that a duty not to make negligent misrepresentations was established by the allegation that the plaintiff sought and obtained investment advice from the defendant. This court made clear, however, that a cause of action for negligent misrepresentation must be based on an untrue representation of fact. No such representations were shown by the credible evidence adduced in the present case.

The second cause of action stated by the complaint in *Schweiger, supra,* was on a theory of breach of fiduciary duty and was based on an allegation that the brokerage house possessed unique information about the particular security in question and failed to convey this information to the plaintiffs. This court recognized that persons offering financial investment services have a fiduciary duty to disclose to their clients all material information concerning the transaction involved. Here there is no allegation of evidence that the bank possessed any unique information about the loan transaction or business venture involved, or that any such information was withheld. The *Schweiger Case* is therefore inapposite.

The theory advanced by the plaintiffs would impose upon the lender the function of actually joining with them as an entrepreneur and thus assuming the risks fundamental to a new business.

In the instant case, there is nothing in the record from which an inference could be drawn that the bank made false or misleading representations, or withheld material information from the borrowers; nor is this a case in which the bank was shown to have access to information unavailable to the borrowers, or to have made affirmative representations that the business enterprise would succeed; nor is it a case in which the borrowers were in any sense incompetent, infirm, or peculiarly dependent upon the bank to make their business decisions.

The plaintiffs recite a number of facts about the circumstances surrounding the loan, apparently on the theory that together these facts show that the bank was negligent. These facts do not reflect any consistent idea about what it was that made the bank negligent in making the loan, or what it should have done under the circumstances, or what standard of care it should have exercised.

Mrs. Gries had no retail experience. However, as the trial court observed, this is true of many persons who open small businesses or individual proprietorships, and cannot realistically preclude the making of a loan. After implying that the bank was negligent to leave the business in the plaintiffs' inexperienced hands, the plaintiffs complain that the bank required them to hire an experienced manager. These arguments are contradictory.

After implying that the bank was not cautious or conservative enough in approving the loan, the plaintiffs inconsistently complain that Mrs. Gries was not allowed to draw a salary from the business and that she found it necessary to work nights. The plaintiffs also suggest

that the loan was inadequately secured, but fail to state how this could have prejudiced them in any manner. They also direct our attention to the fact that the trial court described the loan as a "very poor loan"; that the main office of the First Wisconsin National Bank of Milwaukee had opposed the loan; and that the plaintiffs had initially wanted only to expand their home party operation.

They also imply that the bank deliberately approved a bad loan in an effort to curry favor with Mr. Gries in the hope of securing a deposit of city funds, an allegation which is supported only tenuously by the testimony of Gries that Fiorentini often inquired about the feelings of other aldermen concerning the choice of a depository. Moreover, we are not impressed with the argument that a bank's interest in becoming a municipal depository would be advanced by knowingly making a loan to an alderman for a business venture which the bank believed would fail.

The plaintiffs also state that two banks had previously rejected their loan applications. This does not show negligence. As a matter of law, two prior rejections are required for the granting of an SBA guaranteed loan. 13 C F R, sec. 120.2(a)(1)(iii). By the reasoning of the plaintiffs, an element of negligence would be found in every SBA loan.

None of these observations by the plaintiffs can obscure the basic fact that it was the plaintiffs who borrowed the money to open a business. They called the bank; they prepared a proposal; they applied for the loan; they invested the money in the business. Although the failure of the business is unfortunate for both the plaintiffs and the bank, it was a risk which the plaintiffs assumed, and which can not be shifted to the bank.

The order of the trial court granting the motion for nonsuit and dismissing the action is affirmed. On ap-

peal no arguments are advanced in regard to the judgment which awarded costs to the defendant, and we affirm the judgment.

*By the Court.*—Order and judgment affirmed.