PRODUCTION CREDIT ASSOCIATION OF LANCASTER, WISCONSIN, a federal corporation, Plaintiff-Respondent,

v.

Roger A. CROFT and Combined Crofts Corporation, a Wisconsin Corporation, Defendants-Appellants.†

Court of Appeals

*No. 86–1868. Submitted on briefs December 1, 1987.—Decided February 11, 1988.*

(Also reported in 423 N.W.2d 544.)

† Petition to review denied.

For the defendants-appellants the cause was submitted on the brief of *Carlton Roffa,* of Hales Corners.

For the plaintiff-respondent the cause was submitted on the brief of *R. R. Roggensack* of *Morse & Roggensack,* of Lancaster.

Before Dykman, Eich and Sundby, JJ.

SUNDBY, J. Roger Croft and Combined Crofts Corporation appeal from an order granting the Production Credit Association summary judgment dismissing the appellants' counterclaims. The appellants limit the issues on appeal to: (1) Did the PCA owe a fiduciary duty to them which it breached? (2) Was the PCA negligent in making loans to the appellants which the PCA knew or should have known they could not repay? (3) Did the trial court erroneously substitute summary judgment for a trial? Liberally con-

strued, the appellants' counterclaims also allege that the PCA violated a duty to them of disclosure. The appellants' counterclaims alleging a breach of fiduciary duty and negligence do not state claims upon which relief can be granted. The PCA fulfilled its duty to appellants of disclosure. We therefore affirm.

## I.

## BACKGROUND OF THE CASE

In 1980 appellants signed a loan agreement with the PCA. In 1983 they executed a supplementary loan agreement with the PCA to pay accrued interest. In February and March of 1984, the PCA made additional loans to appellants to provide feed for appellants' livestock. The appellants secured the loans by two real estate mortgages and by security agreements.

The PCA commenced action against appellants to foreclose its real estate mortgages and security agreements. Appellants answered and made the counterclaims which are the subject of this appeal. The trial court granted the PCA summary judgment dismissing the counterclaims.

## II.

## BREACH OF FIDUCIARY DUTY

In reviewing the grant or denial of a summary judgment, we follow the same methodology as the trial court. *Franke v. Durkee,* 141 Wis. 2d 172, 174, 413 N.W.2d 667, 668 (Ct. App. 1987). "The first step of that methodology requires the court to examine the pleadings to determine whether a claim for relief has been

stated." *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

Thus our first task is to determine whether appellants' claim for breach of a fiduciary duty to them states a claim for relief. In determining whether a claim states a cause of action upon which relief can be granted, we take as true the facts pleaded and all inferences which can reasonably be derived from those facts. *Green Spring Farms,* 136 Wis. 2d at 317, 401 N.W.2d at 821. Pleadings are to be liberally construed with a view toward substantial justice to the parties. Sec. 802.02(6), Stats. A complaint should be dismissed as legally insufficient only if it is quite clear that under no circumstances can the plaintiff recover. *Green Spring Farms, supra.*

Appellants argue that their claim establishes a fiduciary relationship between them and the PCA and states a cause of action for the breach of that relationship. The trial court determined that no claim for relief was stated because as a matter of law, the mere existence of a lender-borrower-customer relationship does not create a fiduciary relationship. We first consider whether a fiduciary relationship, under the facts as pled, existed.

Appellants allege:

> 40. That the plaintiff, and its duly constituted agents had been engaged in the business of farm financing and farm credit for a long period of time prior to June 17, 1980 and is substantially and professionally trained, sophisticated and possessed of superior knowledge in the marketplace regarding business, money, finances, mortgage loans, security interests, contracts and interest rates.

751

41. That the individual defendants, and the defendant farm corporation, derivatively, are substantially untrained and unsophisticated in the field of business, money and finances and were compelled to rely upon the honesty, integrity and representations of the plaintiff, and its duly constituted agents, servants and employees, in the circumstances surrounding the execution of the subject Basic Loan Agreement, Supplementary Loan Agreements, Real Estate Mortgages, assignments, financing statements, security interests and promissory notes.

42. That, due to its contractual status with the defendants, the plaintiff, and its duly constituted agents, servants and employees, occupied a position of trust and a fiduciary relationship to these defendants and further owed them a duty to disclose and communicate the time, manner and amounts of any and all payments of principal and interest, together with disclosing the annual interest percentage rates and their variability.

■

Generally, there are two types of fiduciary relationships: (1) those specifically created by contract or a formal legal relationship such as principal and agent, attorney and client, trust and trustee, guardian and ward, and (2) those implied in law due to the factual situation surrounding the transactions and relationships of the parties to each other and to the questioned transactions. *Denison State Bank v. Madeira,* 640 P.2d 1235, 1241 (Kan. 1982). Appellants do not argue that the lender-borrower relationship alone imposes fiduciary duties. They allege, however, that the contract transcended the usual lender-borrower relationship, and that the disparity in knowledge and experience

between the PCA and them imposed fiduciary duties on the PCA.

(a) *Contract.* Appellants argue that because their loan agreements gave the PCA ultimate control of the repayment requirements a fiduciary relationship was created. They rely on *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 492 (1919), where it is stated: "It is the fact of control of the common property held and exercised, not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation."

The 1980 loan agreement recognized that because of the nature of farm business, the parties could not always determine in advance the exact number and dates for appropriate repayments. Thus the PCA was given ultimate control of the repayment requirements and was allowed to vary the specific repayment requirements from time to time. Under the supplementary loan agreement, appellants agreed not to sell or trade any machinery or equipment pledged as loan security without the PCA's prior written consent, to furnish the PCA with an updated inventory of livestock and feed, to allow the PCA to inspect inventory monthly, and to notify the PCA of any offer to purchase the real estate.

We conclude that a fiduciary relationship was not created by the contracts.

> Lenders, under certain circumstances, require borrowers to comply with loan covenants restricting the operation of the borrower's business. ... These covenants often include promises to maintain the collateral and promises to obtain lender approval of certain transactions. These covenants may serve

to keep a "leash" on the operations of the borrower. Arrangements such as these should not give rise to the creation of a fiduciary duty so long as the lender's restraints are reasonably necessary to protect its interest in the collateral and are made in good faith.

Bahls, *Termination of Credit for the Farm or Ranch: Theories of Lender Liability,* 48 Mont. L. Rev. 213, 233 (1987) (footnotes omitted). We adopt this reasoning. The loan provisions appellants rely on were to protect the PCA's security interests and did not vest in the PCA control of appellants' property.

*Bogert,* 250 U.S. at 492, is inapposite. It deals with a well-settled and often applied rule of corporation law and equity that a majority stockholder occupies a fiduciary relationship toward minority stockholders. *Id.* at 487–88. Appellants' reliance on cases cited in Lundgren, *Liability of a Creditor in a Control Relationship with Its Debtor,* 67 Marq. L. Rev. 523 (1984), is also misplaced. Those cases involved the domination of a debtor's business by a lender and suits by trade creditors against the lender as principal on the debtor's obligations under agency, alter ego, trust fund and negligence theories. We also reject appellants' reliance on *Merrill Lynch, Pierce, etc. v. Boeck,* 127 Wis. 2d 127, 377 N.W.2d 605 (1985), because that case dealt with the duties owed by a broker to a customer on a nondiscretionary account, as opposed to the duty owed on a discretionary account. The PCA's loan arrangements with appellants did not constitute a discretionary account in which the PCA made the investment decisions.

(b) *Implied in Law.* Appellants suggest that because they sought financial advice from the PCA, and it represented that it was a partner and knowledgeable agricultural advisor, the law implies a fiduciary relationship. Appellants also argue that a fiduciary relationship existed because of the PCA's sophistication and superior knowledge in the marketplace regarding business, money and finances and because of their reliance on the trust, honesty, integrity and representations of the PCA. They advance a theory used with increasing frequency as a consequence of the farm crisis. *See* Bahls, *supra,* 48 Mont. L. Rev. at 231–33.

"A fiduciary relationship arises from a formal commitment to act for the benefit of another ... or from special circumstances from which the law will assume an obligation to act for another's benefit." *Boeck,* 127 Wis. 2d at 136, 377 N.W.2d at 609. However,

> [a] fiduciary relationship between a lender and borrower may be established when a borrower demonstrates that a lender acted as financial advisor to a subservient borrower and the borrower relied on the lender's advice. Factors a court considers when determining whether borrowers are subservient generally include the borrower's age, mental capacity, health, education and degree of business experience. The courts also focus on the degree to which the subservient party entrusted his or her affairs to the lender and reposed confidence in the lender.

Bahls, *supra,* 48 Mont. L. Rev. at 231–32. Manifest in the existence of a fiduciary relationship is that there exists an inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of

755

facts involved, or other conditions giving to one an advantage over the other. *Denison State Bank,* 640 P.2d at 1241. *See also Gries v. First Nat. Bank of Milwaukee,* 82 Wis. 2d 774, 779, 264 N.W.2d 254, 257 (1978) (no cause of action stated because it was not "a case in which the borrowers were in any sense incompetent, infirm, or peculiarly dependent upon the bank to make their business decisions.").

Appellants allege that they are farmers not possessed of the PCA's sophisticated and superior knowledge of the marketplace and finances and that they were compelled to rely on the PCA for financial advice. We must accept these allegations as true for purposes of determining whether they state a claim upon which relief can be granted. The facts as alleged by the appellants do not establish anything beyond the lender-borrower relationship which one customarily finds where a production credit association is the lender and a farm operator is the borrower. The attitude of assistance and advice which the appellants allege is no more than one would expect where the lender has a substantial interest in the borrower's financial welfare.[1]

We conclude that the financial advice or encouragement offered by the PCA did not create a fiduciary relationship between it and the appellants.

[1]Although we must accept the appellant's allegations as true for purposes of determining whether the appellants have stated a claim, we note that in his deposition testimony, appellant Roger Croft admitted that when he entered into the loan arrangement with the PCA he had already incurred a substantial amount of financial indebtedness. He also admitted that he had the right to exercise his own judgment on whether or not to buy more cattle, even though he acted on the PCA's recommendations as financial advisors. Croft was not an inexperienced, first-time borrower.

So long as the farmer makes his or her own business decisions and the advice given by the lender is nothing more than optional advice or is reasonably related to protection of the lender's interest in its collateral, lenders should not be treated as having a fiduciary responsibility to the borrower. Debtors should not be allowed to rely blindly on advice given by a lender and hold the lender responsible for its losses if the advice, with the benefit of hindsight, is not appropriate. To so hold would discourage borrowers from exercising ordinary prudence in relying on the business advice given by others.

Bahls, *supra,* 48 Mont. L. Rev. at 232.

■ The supreme court has consistently rejected theories which would make a third party an involuntary guarantor of a person's business decisions. *See Gries,* 82 Wis. 2d at 780, 264 N.W.2d at 257 (failure of business was a risk borrowers assumed and cannot be shifted to the bank); *Boeck,* 127 Wis. 2d at 137, 377 N.W.2d at 609 (a broker should not be made a guarantor of a customer's investments). A fiduciary relationship does not arise merely because advice and counsel is offered upon which a customer places trust and confidence. *Boeck,* 127 Wis. 2d at 136, 377 N.W.2d at 609.

III.

NEGLIGENCE

■ The appellants claim that the PCA was negligent in making loans to them which it knew or should have

known they could not repay.[2] The trial court correctly dismissed the claim for failure to state a claim upon which relief could be granted. *Gries,* 82 Wis. 2d at 779–80, 284 N.W.2d at 257, holds that there is no such cause of action. As the appellants note, their counterclaims for breach of a fiduciary duty and negligence are so "inextricably woven" that they present but one claim. Our analysis of the breach of fiduciary duty is equally applicable to appellants' claim based on negligence and negligent misrepresentation.

## IV.

## FAILURE TO DISCLOSE

The trial court also granted summary judgment to the PCA because it had complied with its duty of disclosure.[3] The question of a legal duty to disclose is

---

[2]Although the appellants label part II of their brief "Negligent Misrepresentation," they argue that they were damaged by the PCA's negligence in "soliciting and making [them] a secured loan." Their counterclaim based on the PCA's negligence does not allege negligent misrepresentations upon which they relied, to their damage.

[3]The trial court characterized appellants' counterclaim for breach of fiduciary duty as "nearly unintelligible as to what cause of action is being pleaded." After disposing of the fiduciary duty claim the trial court went on, reading the complaint liberally as it was bound to do, "[i]f one were to take all of the pleadings and try to dig out a cause of action perhaps the pleadings make a claim that a plaintiff had a duty to disclose certain facts to the defendants, that they [sic] failed to disclose such facts to the defendants and that as a result thereof defendants were damaged." We experience the same difficulty as the trial court in reading appellants' complaint. Since we must read the complaint liberally, it is necessary to consider, according to summary

question of law. *In Matter of Estate of Lecic,* 104 Wis. 2d 592, 605, 312 N.W.2d 773, 779 (1981). Beyond a fiduciary duty there are circumstances in which a duty to disclose may arise: (1) one who speaks must say enough to prevent his words from misleading the other party; (2) one who has knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party. *Klein v. First Edina National Bank,* 196 N.W.2d 619, 622 (Minn. 1972). The supreme court has alluded to these special circumstances as creating a duty where ordinarily none would exist. *See Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 30–31, 288 N.W.2d 95, 102 (1980); *Gries,* 82 Wis. 2d at 779, 264 N.W.2d at 257.

Appellants argue that when the PCA learned of their inability to repay the secured loan except by way of liquidation or refinancing, it was required to disclose this to them. They suggest this was a unique fact bearing on the advisability of making the loan.

The trial court determined that the undisputed facts established that the PCA did not possess any unique information unavailable to appellants.[4] Croft admitted that when he signed the supplementary loan

judgment methodology, the trial court's grant of summary judgment to the PCA because it had fully complied with its disclosure obligations.

[4]The appellants' affidavit in opposition to the motion for summary judgment incorporated deposition testimony of Glen Gard, the PCA loan officer, and Roger Croft. Gard acknowledged that the PCA knew that the appellants could not repay the entire loan except by liquidation or refinancing. Croft testified that the PCA was pressing him to liquidate his assets and that in September, 1983 he listed his farms for sale. The affidavit did not raise a dispute as to any material fact in this regard.

agreement he had listed his farm for sale because the PCA was pressing him to liquidate to fulfill his loan obligations. Further, appellants have not alleged that they requested such information from the PCA. They must exercise reasonable diligence for their own protection. *See Denison State Bank,* 640 P.2d at 1243 (one cannot avoid the responsibility of exercising reasonable diligence for his own protection by relying upon his bank to provide him with information which was not specifically requested and which was otherwise readily available). We conclude that the PCA did not possess any unique facts to which appellants had no access and therefore it did not breach a duty to appellants of disclosure.

## V.

### IMPROPER SUMMARY JUDGMENT

Appellants claim that the trial court impermissibly substituted summary judgment for trial. They claim "[v]arious 'editorial' comments contained [in the court's memorandum decision] would seem consistent with this argument." Appellants do not cite any particular "editorial comment" supporting their argument. They do not cite disputed issues of material fact which precluded the trial court from granting summary judgment. We reject appellant's argument.

*By the Court.*—Judgment and order affirmed.