CENTRAL PRODUCTION CREDIT
ASSOCIATION OF ST. LOUIS,
Missouri, Respondent,

v.

Eugene A. PENNEWELL and Emma D.
Pennewell, Appellants.

No. 55145.

Missouri Court of Appeals,
Eastern District,
Northern Division.

June 13, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 6, 1989.

Gale Anne Todd, St. Louis, for appellants.

Joseph D. Welch, Hannibal, for respondent.

DOWD, Judge.

Appellants challenge the trial court's actions regarding their counterclaims and the trial court's judgment in respondent's action to recover a deficiency on a note after the foreclosure sale. We affirm.

Appellants, Eugene and Emma Pennewell, were farmers who had done business with respondent, Central Production Credit Association, for many years. Respondent lending institution is part of the Federal Farm Credit System. Appellants routinely obtained loans, in the form of lines of credit, from respondent. When a loan became due, appellants would refinance it with a new loan. On March 21, 1985, appellants obtained a loan from respondent for $87,-313.59 and gave a promissory note, secured by real estate, due on December 15, 1985. Appellants defaulted on the loan after it matured and respondent foreclosed on the property. Respondent was the successful bidder at the foreclosure sale and purchased the real estate for $10,000, subject to a first deed of trust held by another lending institution.

On March 4, 1986, respondent filed suit to recover the deficiency plus accrued interest and attorney's fees. On May 27, appellants filed an answer and counterclaim. The counterclaim stated that five weeks after executing the note, respondent informed appellants that the collateral for the note was insufficient and requested more collateral. When appellants refused to supply additional collateral, respondent threatened to accelerate the note, but eventually agreed not to pursue collection until the due date. The counterclaim stated that the attempt to accelerate was not made in good faith. Appellants also claimed that respondent, in bad faith, "demanded payment ... before [appellants] had an opportunity to renew the note." They requested actual damages of $142,420 and punitive damages of $2,000,000.

Pursuant to respondent's motion, this counterclaim was dismissed on September 9, 1986 for failure to state a claim on which relief could be granted. Fifteen months later, after a date for trial had been set, appellants filed a motion requesting leave to amend their pleadings to include additional counterclaims for violation of good faith, fraud, misrepresentation and tort. A proposed amended counterclaim was not filed with the motion. On January 5, 1988, the trial court granted appellants twenty days to file a motion requesting leave to file counterclaims. On January 25, appellants filed a First Amended Answer and Counterclaim, but no motion. The amended counterclaim contained nine counts: breach of the duty of good faith imposed by the U.C.C.; breach of the duty of good faith imposed by the common law; breach of contract; breach of oral contract; willful breach of fiduciary duty; false representation; willful false representation; breach of duty of good faith under the U.C.C. in accelerating the note; and breach of duty of good faith under non-code law in accelerating the note. The court heard arguments on the motion to amend and denied the motion on February 2. On April 8, 1988, a non-jury trial was held solely on the issue in respondent's pleadings. The judge awarded respondent $68,915.83 as principal due on the note, $17,683.99 as interest, and $14,059.98 as attorney fees.

Appellants' first point on appeal claims the trial court erred in dismissing their counterclaim because it could be construed to state any one of five causes of action: (1) tortious breach of the obligation of good faith designated by the U.C.C.; (2) breach of an express contract provision of good faith; (3) a non-code tortious breach of good faith; (4) a non-code contractual breach of good faith; and (5) a U.C.C. contractual breach of good faith under sections 400.1–203 and 400.1–208, RSMo 1986. Appellants correctly state that a motion to dismiss a pleading for failure to state a claim should not be granted if the facts pleaded and all reasonable inferences viewed in the light most favorable to the pleader demonstrate any basis for relief.

*B.L. Jet Sales, Inc. v. Alton Packaging,* 724 S.W.2d 669, 671 (Mo.App.1987).

■ Even given this liberal standard appellants' counterclaim fails to state a claim on which relief could be granted. In their brief, appellants claim that after the demand for additional collateral and the threat to accelerate respondent refused to advance funds on the line of credit even though there was over $10,000 available. Appellants argue that this refusal precipitated their financial downfall. The five theories presented in appellants' brief could apply to a breach of good faith in accelerating the loan or, perhaps, refusing to advance funds in the line of credit. Unfortunately for appellants, these operative facts were not pleaded in the counterclaim. Under the facts stated in the counterclaim, it appears that appellants must have been damaged by respondent's demand for payment after the maturity date. We are not aware of and appellants have not presented any legal theory that would prevent a lender from attempting to collect a mature note. Thus, appellants could not recover under the facts stated in the counterclaim and the trial judge correctly dismissed it for failure to state a claim.

■ Appellants next claim that the trial court erred in dismissing the counterclaim because they were not granted leave to amend their pleadings. They cite Missouri Rule of Civil Procedure 67.06, which provides that "on sustaining a motion to dismiss a claim, counterclaim or cross claim the court shall freely grant leave to amend." This rule does not require a court to grant such leave sua sponte, however; if the aggrieved party does not request leave to file an amended petition, he cannot later complain about the court's failure to grant leave. *Greening v. Klamen,* 719 S.W.2d 904, 906 (Mo.App.1986). Upon dismissal of a pleading for insufficiency, the pleader has a reasonable time to request leave to amend. *Dietrich v. Pulitzer Publishing Co.,* 422 S.W.2d 330, 334 (Mo.1968). Appellants did not request leave to amend for fifteen months and waited to do so until trial was less than four months away. The request was not made within a reasonable

time so appellants cannot complain that the court failed to grant them leave to amend.

■ In a related point, appellants claim that the trial court erred in denying their motion to amend their counterclaim. After restating their argument in Point II, they add a discussion of the three factors to consider when determining whether to grant leave to amend: (1) the reasons for failure to include the new issues in the original pleading; (2) possible injustice to the opposing party should leave be granted and; (3) hardship to the moving party if leave is denied. *Gierke v. Hayes,* 724 S.W.2d 282, 286 (Mo.App.1987).

The record on appeal does not indicate why the trial court failed to accept the amended petition. The court's initial request for a "motion requesting leave to file counterclaims" was never met although an amended petition was filed to supplement the earlier motion to amend. Although we do not know whether the court's action constituted a denial of the motion on its merits or a denial for failure to comply with the court's earlier request, we may still address this point. The lower court's actions may be upheld if sustainable on any theory, *Ederle v. Ederle,* 741 S.W.2d 883, 885 (Mo.App.1987), and the lower court would have been justified in denying the motion to amend based on the three factors mentioned above.

Admission of a nine count pleading two months before trial would appear to work a great hardship on the opposing party unless it knew about the proposed use of and was able to prepare for rebutal of each separate theory. Although appellants argue that respondent had been preparing to rebut their counterclaims, they do not argue that respondent had prepared for all of the nine counts. Appellants attempt to justify their failure to include the new facts and theories in their original counterclaim by stating that they did not know respondent "actually knew and believed the note was fully secure" nor did they know respondent's "motive for requesting excessive additional collateral" until the July 29, 1987 deposition of respondent's employee, Elmo Ravenscraft. Appellants do not ex-

plain why they waited five months after the deposition to seek amendment. Similarly, they do not explain their failure to include in the original counterclaim the additional facts about attempted acceleration and failure to forward the balance on the line of credit. In short, appellants fail to offer a good excuse for allowing an amendment that would work a great hardship on respondent.

■ Finally, appellants claim that the trial court erred in determining damages because that amount is against the weight of the evidence, unsupported by substantial evidence and in excess of the amount pleaded. The court award included amounts for principal, interest and attorney's fees, all of which were primarily based on the testimony of respondent's employee, Mr. Gares.

Appellants attack the award for principal by claiming that Mr. Gares's testimony was the only evidence presented to support this amount and was not credible due to discrepancies. They dispute the interest award because it is based on the principal. This argument fails to account for the well-accepted principle that, in a court tried case, the trial judge is free to believe or disbelieve any testimony and to determine what weight to give a witness's testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988). Obviously, the judge chose to believe Mr. Gares and based his judgment on that testimony. This is sufficient evidence to support the award of damages for principal and consequently for interest.

■ Appellants also attack the award of attorney's fees because $1,322.52 of the fees were paid with proceeds of the foreclosure sale. They claim that the total amount of attorney's fees accrued should have been reduced by the amount actually paid. Mr. Gares initially testified that respondent's books showed $14,059.98 was the amount appellants owed for attorney's fees. He later stated that of the $10,000 proceeds of the foreclosure sale, $1,322.50 was applied to the attorney's fee account.

Appellants' attorney asked Mr. Gares how the foreclosure costs were accounted for, but he was unable to determine if they had been included in the attorney's bills or if respondent had paid them. Respondent's attorney testified that his firm billed respondent for a total of $14,059.98 and the record indicates this amount did not include foreclosure costs.

The record does create a question as to whether the $1,322.50 credit to the attorney's fee account was reflected in the damage award, but it does not conclusively demonstrate that the credit was ignored. It is possible that the foreclosure costs were charged in respondent's books as attorney's fees and that the credit offset this amount. Mr. Gares testified that the total attorney's fees due from appellants was $14,059.98 according to the balance in respondent's books. The court was free to believe this statement despite the confusion over the foreclosure proceeds. *Herbert v. Harl,* 757 S.W.2d at 587. Consequently, there was evidence to support the damage award for attorney's fees.

■ Appellants attack the judgment amount as a whole because it exceeds the amount prayed for. Respondent's petition requested $66,654.62 in principal, plus interest and attorney fees. Admittedly, the $68,915.83 principal award exceeds the plea, but the issue of principal in that amount was tried by implied consent and we treat it as if it had been raised in the pleadings. Rule 55.33(b).

The judgment of the lower court is affirmed.

PUDLOWSKI, C.J., and GRIMM, J., concur.