Donald D. YOEST and Marilyn
K. Yoest, Appellants,

v.

FARM CREDIT BANK OF ST. LOUIS
and Central Production Credit
Association, Respondents.

No. WD 44820.

Missouri Court of Appeals,
Western District.

May 26, 1992.

M. Corinne Corely, Arens Law Firm, Fayetteville, Ark., for appellants.

Jerry W. Venters, Venters, Pletz & Reed, P.C., Jefferson City, for respondents.

Before BRECKENRIDGE, P.J., and LOWENSTEIN, C.J., and HANNA, J.

BRECKENRIDGE, Presiding Judge.

Donald and Marilyn Yoest appeal from an order of dismissal by the trial court for failure to state grounds on which relief could be granted. The Yoests contend that the trial court erred in dismissing their petition because: (1) Count I properly stated a cause of action for breach of fiduciary duty; (2) Counts II and III properly assert-

ed the requisite elements for breach of contract; (3) Counts I, II and III were not barred by the lack of a private right of action under federal law as each cause of action was predicated upon state common law; and (4) punitive damages are recoverable against both defendants. The judgment is affirmed.

On August 24, 1990, Donald and Marilyn Yoest filed a petition in the Cole County Circuit Court naming the Farm Credit Bank of St. Louis (FCB) and Central Production Credit Association (CPCA) as defendants in an action wherein the Yoests alleged that CPCA had breached its fiduciary duty and its duty to deal in good faith with them and that FCB breached a contract it had with the Yoests by refusing to roll over CPCA short-term notes into an FLB long-term note. In addition to actual damages, the Yoests sought punitive damages. FCB operates through the local Federal Land Banks (FLBs) in Missouri.

The Yoests are family farmers who own approximately 390 acres of land in Moniteau County and Morgan County. Both are members of CPCA; Donald since 1959 and Marilyn since 1965. The Yoests relied on CPCA as their primary source for operating funds. They applied for and received one or more loans from CPCA each year since 1965. These loans were secured by liens on cattle and farm equipment with further security in the form of liens on capital stock of or participation certificates in CPCA.

The Yoests accuse CPCA of engaging in a course of conduct to force them to cease farming and lose their family farm. This conduct, they claim, resulted in a breach of CPCA's fiduciary duty to them and a breach of CPCA's duty to deal with them fairly and in good faith. The Yoests' petition outlines a series of transactions concerning Donald Snorgrass, CPCA's branch manager, and the Yoests. According to the petition, the Yoests sought out Mr. Snorgrass's advice as to what to do with their land and he suggested that they rent the land to his brother. Donald Kuester, field manager of CPCA, wrote to the Yoests on behalf of CPCA, telling them

that their loan would not be renewed if its balance was in excess of $50,000.00. A second memorandum gave the figure of $45,000.00 as the outside limit. The Yoests informed Mr. Snorgrass of their difficulty with CPCA's change of policy and told him that his brother would not renew his lease, and that they planned to farm the land themselves.

The Yoests also allege, *inter alia,* that they: were forced to get a loan from a bank; sign 132 acres of their farm into the Conservation Reserve Program (CRP) in order to make timely payments on their CPCA notes; were erroneously informed that they could not use a "MOBUCKS" loan as operating funds; were pressured to obtain a FmHA subordination; were not timely informed of their right to refinancing under the 1985 Agricultural Credit Act; and were not informed of more liberal restructuring rights under the Agricultural Credit Act of 1988.

In Count III of their petition, the Yoests contend that FCB breached an agreement with them by refusing to roll over CPCA short-term notes into a Federal Land Bank long-term note. On December 26, 1986, Donald Snorgrass, on behalf of CPCA notified the Yoests that CPCA would only renew their loans for four months. The Yoests objected but were told by Mr. Snorgrass that four months would be ample time for them to seek an FmHA subordination and that he would process an application for the Yoests to obtain an FLB long-term loan. Mr. Snorgrass explained that CPCA and FLB had merged and that he represented both entities.

The Yoests allege that they entered into a contract with the FLB, pursuant to which the FLB promised to roll the short-term CPCA notes into a long-term FLB note. The notes were not rolled over. No copy of this agreement is found in the record.

CPCA and FCB moved to dismiss on all counts for failure to state a cause of action and moved to strike the Yoests' prayer for punitive damages because such damages were prohibited by the defendants' status as federal instrumentalities. The trial

court sustained the motion to dismiss. The Yoests appeal.

■ A motion to dismiss for failure to state a claim should not be sustained if any basis for relief can be demonstrated on the facts pleaded and all reasonable inferences therefrom, viewed in the light most favorable to the petitioning party. *Central Prod. Credit Assoc. v. Pennewell,* 776 S.W.2d 21, 22 (Mo.App.1989). In the instant case, giving the petition the most liberal reading, no cause of action has been pleaded upon which relief could be granted.

■ The Yoests first contend that the trial court erred in dismissing their petition because Count I properly stated a cause of action for breach of a fiduciary duty. The Yoests rely on state common law to make this claim. Neither state nor federal law supports such an action, however.

"Ordinarily, there is no confidential or fiduciary relationship between debtor and creditor." *Neal v. Sparks,* 773 S.W.2d 481, 486–87 (Mo.App.1989); *see also Centerre Bank of Kansas City, N.A. v. Distributors, Inc.,* 705 S.W.2d 42, 53 (Mo.App.1985). The Yoests do not allege any of the elements necessary to prove a confidential or fiduciary relationship under *Neal,* which provides:

> Moreover, to prove a confidential or fiduciary relationship it is necessary to show that one party because of age, state of health, illiteracy, mental disability or ignorance has become subservient to the dominant will of another, that the property of the subservient person has come into the possession or management of the dominant person, that the subservient person has surrendered his independence, and that there has been manipulation of the actions of the subservient party who has placed his trust and confidence in the dominant person. *Chmieleski v. City Products Corp.,* 660 S.W.2d 275, 294 (Mo.App.1983).

*Neal v. Sparks,* 773 S.W.2d at 486.

The Yoests do not plead that they had become subservient to the dominant will of CPCA because of their age, health, illiteracy or ignorance. Their pleadings reveal that they were experienced borrowers, borrowing money from CPCA over the course of many years. The facts do not demonstrate subservience. To the contrary, the Yoests challenged the appraised value of their property, obtained a loan from an institution other than CPCA, and farmed their own land over the objections of the CPCA branch manager.

There are no facts pled to show that the Yoests' property was in the possession or management of CPCA. They continued to make decisions regarding the property, obtaining loans and signing the property into ASCS and CRP. Nor did the Yoests surrender their independence to CPCA. Their petition states that they "would not follow Donald Snorgrass's advice" as to the method of obtaining a FmHA subordination.

■ The Yoests' attempt to characterize their relationship with CPCA as more than a creditor-borrower relationship, because CPCA is a cooperative lending association and not a bank, is unpersuasive. They contend that their "petition drew a picture of a farm cooperative association which inserted itself into the Yoests' farming activities by cultivating the dependence and reliance of the Yoests on the CPCA's knowledge and expertise." Similar arguments in other jurisdictions have failed.

In *Production Credit Ass'n of Lancaster v. Croft,* 143 Wis.2d 746, 423 N.W.2d 544 (App.1988), the appellants alleged that a fiduciary relationship existed between them and PCA because of PCA's sophistication and superior knowledge of business and finances. Appellants alleged that they were farmers, not possessed of PCA's expertise. The court held that the facts alleged "do not establish anything beyond the lender-borrower relationship which one customarily finds where a production credit association is the lender and a farm operator is the borrower." *Id.,* 423 N.W.2d at 548. The "assistance and advice" that the PCA gave the appellants, was "no more than one would expect where the lender has a substantial interest in the borrower's financial welfare." *Id.* *See also, Mantooth v. Federal Land Bank of Louisville,* 528 N.E.2d 1132 (Ind.App.1988).

The Yoests' membership in CPCA is not a basis for a fiduciary relationship. A fiduciary relationship between borrower and lender does not arise because the borrowers are members or shareholders in a production credit association, absent a showing of special circumstances. *Production Credit Ass'n of Fargo v. Ista,* 451 N.W.2d 118, 120–21 (N.D.1990). Nor does federal common law support such a relationship. *Boyster v. Roden,* 628 F.2d 1121, 1125 (8th Cir.1980). As discussed *supra,* the Yoests do not plead the elements required under *Neal* to establish such a relationship. Furthermore, the Yoests do not have a private right of action under the Agricultural Credit Act of 1987 to enforce the Act's borrowers' rights provisions. *Zajac v. Federal Land Bank of St. Paul,* 909 F.2d 1181, 1183 (8th Cir.1990); *Harper v. Federal Land Bank of Spokane,* 878 F.2d 1172, 1177 (9th Cir.1989). Point I is denied.

In Point II, the Yoests contend that the trial court erred in dismissing their petition because Counts II and III were properly asserted in that each alleged the requisite elements for breach of contract and neither violated the statute of frauds. In Count II, the section of the petition captioned "Breach of Duty to Deal Fairly and in Good Faith," the Yoests allege that, "At all times hereto relevant, the CPCA owed a duty to the Yoests as members of the CPCA to deal with them fairly and in good faith, and which duty arose from the course of dealing between the parties and which remained in full force and effect throughout the transactions hereinabove described." Although it is difficult to decipher, the Yoests' Count II appears to sound in tort rather than contract. The vagueness of the petition makes it unclear as to what contract was allegedly breached by CPCA. Even the most generous reading of Count II yields no statement of a cause of action.

The Yoests rely on *Missouri Pub. Serv. Co. v. Peabody Coal Co.,* 583 S.W.2d 721, 724–25 (Mo.App.1979), which explores the U.C.C. provision imposing an obligation of good faith on the part of a buyer and of a seller as part of contracts for the sale of goods. Count II appears to involve the membership contract between CPCA and the Yoests. As discussed *supra,* the Yoests' membership in CPCA is not a basis for a fiduciary relationship. Assuming that this is the contract referred to in Count II, it was not properly pleaded to state a cause of action sounding in contract.

A plaintiff's petition states a cause of action where "its averments invoke principles of substantive law which may entitle the plaintiff to relief." *Asaro v. Cardinal Glennon Memorial Hosp.,* 799 S.W.2d 595, 597 (Mo. banc 1990). In order to state a cause of action for breach of contract, the plaintiff must plead an agreement between parties capable of contracting; mutual obligations arising under the agreement in respect to a definite subject matter; valid consideration; part performance by one of the parties and the prevention of further performance by the other; and damages measured by the contract resulting from its breach. *Berra v. Papin Builders, Inc.,* 706 S.W.2d 70, 73–74 (Mo. App.1986). The Yoests have not pleaded a contract with any measure of definiteness and certainty. The petition does not give the terms of the membership contract, the obligations of the respective parties or the measure of damages determined by the contract. There is no copy of the contract, no way to determine the respective rights and duties of CPCA and members of that organization.

The same infirmities of pleading prove fatal to the Yoests' Count III in which they allege a breach of contract against the FCB. The Yoests allege that "[i]n December, 1986, the Yoests and the FLB entered into a contract pursuant to which FLB promised to roll the Yoests' short-term CPCA notes into an FLB long-term note and the Yoests agreed to obtain an FmHA subordination to put the FLB in a better security position." The Yoests claim that this agreement was breached when the FCB refused to roll the CPCA short-term notes into a long-term note. There is nothing in the pleading to show whether or not the alleged contract was

oral or written, nothing to show the terms of the notes, the amounts involved or time period of the terms. In short, the pleading is so indefinite and uncertain that no cause of action for breach of contract is stated. It is, therefore, not necessary to address the applicability of the statute of frauds, § 432.010, RSMo 1986. Point II is denied.

In their third point, the Yoests claim that their petition was not barred by the lack of a private right of action under the federal statutes because the action was predicated upon state common law. As discussed previously in this opinion, the Yoests failed to state a claim under Missouri law. Said holding renders further discussion of Point III unnecessary.

As the other issues have been ruled adversely to the Yoests, the question of punitive damages will not be addressed. However, even had the Yoests been successful in their attempt to state a cause of action, asserting punitive damages against FCB and CPCA would be an avenue foreclosed by those institutions' status as federal entities and their immunity from such damages. *Rohweder v. Aberdeen Prod. Credit Ass'n*, 765 F.2d 109, 113 (8th Cir. 1985).

The judgment is affirmed.

All concur.