[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
In this case, the plaintiffs are an unincorporated association and three people who are members of that association which is called Sculpture 2000 (the association). The defendant has filed a one-count motion to strike against this one-count revised complaint.
According to the complaint, Sculpture 2000 "is an association created to promote and to enhance the presentation of sculpture art works in New London County" (paragraph 1). The defendant is an educational corporation qualified as a non-profit institution under the federal tax code and entitled to receive donations and public grants.
Paragraph 3 goes on to state that in 1999, the college agreed to assist the association and to act as "a host umbrella for the solicitation, maintenance and accounting of contributions and other funding for" the association and also to provide "in-kind services" The college agreed to act under its tax exempt status so that tax deductible donations could be made to the association; the college agreed to administer such donations and other grants to expend monies "for the purposes and benefit" of the association (paragraph 4).
Paragraph 5 then says the college "agreed and undertook to act in a fiduciary capacity on behalf of Sculpture 2000 International." The college acted as a host under its federal tax exempt status thus being entitled to receive funds for the functions and events of the association. The college did, in fact, function as a host and participated in soliciting and receiving funds. Paragraph 7 goes on to allege that the college benefitted from the publicity and goodwill generated by it being recognized as host for the association besides receiving the benefit of sculptures donated by the artists.
Paragraph 8 states the funds donated for the association's benefit "were the fiduciary responsibility of the college which had the duty" to CT Page 14635 allocate the funds in accordance with the [association] charitable purposes along with following the association's instructions.
Paragraph 9 goes on to claim that on various occasions from 2000 to 2001, the college president. who was also chairman of the association's steering committee, disbursed funds of the association without authorization and agreement of the [association's] steering committee and contrary to the fiduciary responsibility of "the college" and lists the disbursements.
Paragraph 11 finally states the monies were distributed to the college and for its benefit "in breach of its duties and responsibilities to Sculpture 2000 International."
The motion to strike basically argues that the revised complaint "contains insufficient factual allegations to make out a viable cause of action for breach of fiduciary duty." Far from denying this characterization of their complaint, the plaintiffs in their brief oppose the motion "for the reason that the allegations made by the plaintiffs within their complaint very clearly and sufficiently present a claim of breach of fiduciary duty."
The standards to be applied in deciding a motion to strike are well known. Every reasonable inference must be given to a complaint that is subject to such a motion. Amodio v. Cunningham, 182 Conn. 80, 82 (1980). However, given the posture of the positions taken by the parties, especially the last quoted one by the plaintiffs, the court cannot avoid granting this motion to strike by inferring from the factual allegations made in the complaint that, in fact, another cause of action — say, breach of contract — is set forth. Obviously, the plaintiff wishes to take advantage of the procedural benefits a breach of fiduciary duties claim provides. The court, in Dunham v. Dunham, 204 Conn. 303,322-323 (1987), said that: "Once `a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary'. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence."
First, some preliminary observations should be made. For better or worse, we are a fact pleading state and a motion to strike under Practice Book § 10-43. like the old common law demurrer, only admits "well pleaded" facts; it does not admit opinions or mere legal conclusions or conclusory statements. A conclusory allegation cannot be used to avoid a CT Page 14636 motion to strike. Elliot's Appeal, 74 Conn. 586, 601 (1902); McAdam v.Sheldon, 153 Conn. 278, 282 (1965); Moore v. Bunk, 154 Conn. 644, 649
(1967); Connecticut Civil Procedure, Stephenson. Vol. 1, § 116(c);Connecticut Practice, Horton Knox, Vol. 1, commentary at p. 275. This view necessarily follows from the acceptance of a fact pleading procedural regime because of the following reasoning set forth in Smithv. Furness, 117 Conn. 97, 99 (1933). where the court said:
 "The adverse party has the right to have the facts appear so that the question whether they support the conclusion may be determined and that he (she) may have the opportunity to deny them. . . . A pleading defective in alleging a conclusion without facts to support it is demurrable."
In Research Associates, Inc. v. New Haven Redevelopment Agency,157 Conn. 587, 588-589 (1968), the court said: "The burden rests on the plaintiff to allege a recognizable cause of action and it is not sufficient that a complaint refer to a basis of liability by some distinctive name" . . . a complaint thus is demurrable if the plaintiff does not meet its requirement "to set forth facts upon the basis of which, if true, he (she) may be able to establish in law a right to relief. . . ."
Keeping the foregoing observations in mind, the issue before the court is whether there is any factual basis set forth in the factual allegations of the complaint for the legal claims in the fifth, eighth and ninth counts that the defendant college "undertook to act in a fiduciary capacity" or had fiduciary responsibilities in its relationship with the plaintiffs.
The first question that must be addressed is how is the court to determine if a fiduciary relationship exists. As Wisconsin court lays out the test which our Supreme Court seems to adopt; the court in ProductionCredit Ass'n. v. Croft, 423 N.W.2d 544, said at p. 546:
"Generally, there are two types of fiduciary relationships (1) those specifically created by contract or a formal legal relationship such as principal and agent, attorney and client, trust and trustee, guardian and ward[1] and (2) those implied in law due to the factual situation surrounding the transactions and relationships of the parties to each other and to the questioned transactions." See also Farmer City State Bank v. Guingrich, 487 N.E.2d 758, CT Page 14637 763 (Ill.App., 1985).
The court in Dunham v. Dunham, 204 Conn. 302 (1987), appears to accept this two-step format in order to determine if a fiduciary relationship exists in a particular case.
In Dunham, the defendant was an attorney but an issue between the parties was whether he had an attorney-client relationship with his plaintiff brother in a dispute over the mother's will and other estate property.
The court, in effect, said the absence of such an attorney-client relationship would not bar the trier of fact from concluding that in other respects a fiduciary relationship existed between the parties.
The court reasoned at p. 320:
 "Rather than attempt to define a `fiduciary relationship in precise detail and in such a manner to exclude new situations', we have instead chosen to leave the bars down for situations in which there is a justifiable trust confided on the one side and a resulting superiority and influence on the other.'"
The court noted in the case before it that: "On the present record, which indicates that the defendant is the older brother of the plaintiff, and that the plaintiff continually placed his trust and confidence in the defendant for both legal and nonlegal advice, we are convinced that the court properly submitted this issue to the jury" (the issue being the existence of a fiduciary relationship, id. p. 321).
The Dunham court was applying the following characterization of a fiduciary relationship: "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . the superior position of the fiduciary or dominant party affords [that party] an opportunity for abuse of the confidence reposed in [that party],204 Conn. at p. 322.
Using a similar analysis, other courts have reviewed considerations taken into account in deciding whether when a fiduciary relationship is not created by contract or formal legal relationship one can be found by the circumstances of the transactions between the parties. Thus, inProduction Credit Ass'n. v. Croft, 423 N.W.2d 544, 547 (Wis.App., 1988), CT Page 14638 the court said: "Manifest in the existence of a fiduciary relationship is that there exists an inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of facts involved, or other conditions giving to one an advantage over the other." Simon v. Wilson, supra, said virtually the same thing: "Factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health, mental condition, education and business experience and the extent to which the allegedly servient party entrusted the handling of his (sic) business and financial affairs to the other and reposed faith and confidence in him (sic),"684 N.E.2d at p. 797; also see "Fraud", 37 CJS, § 6. Fiduciary or Confidential Relationship, pp. 177-182. All of the foregoing explains the results reached in a case like Dunham or the older case of Harperv. Adametz, 142 Conn. 218 (1955) (fraud case, plaintiff induced to rely on fact defendant was agent of seller of real estate in believing his offer to buy would be transmitted to seller; court said fiduciary relationship could be deduced from such circumstances to permit action in equity. Defendant's very position gave him advantage over plaintiff which he used to acquire the land and make a secret profit).
The court will now attempt to apply the foregoing principles to decide the issue before it. Given the factual allegations of the complaint can it be said that (1) a fiduciary relationship was specifically created by contract or by reason of a formal legal relationship, (2) or can such a relationship be implied in law due to the factual situation surrounding the transactions and relationships of the parties to each other and the questioned transactions?
 (1) (a)
Paragraph 5 of the complaint says that the defendant college "agreed and undertook to act in a fiduciary capacity." This is an ambiguous and conclusory assertion in the sense that nowhere else in the complaint or any attachment to it or even, for example, the plaintiffs brief Opposing the motion is there any reference to a written or oral contract between the parties where the defendant explicitly agreed to act as a fiduciary. It appears that the assertion in paragraph 5 is merely a legal inference the plaintiffs themselves draw from the other allegations of the complaint. In any event, since the referenced allegation is at best ambiguous insofar as it means to assert an explicit and specific contractual agreement by the college to act as a fiduciary the court, pursuant to Practice Book § 10-1, directs the plaintiff to draft a new complaint making that specific allegation if it so intends. That section CT Page 14639 of the Practice Book states that: "If any such pleading does not fully disclose the ground of claim . . . the judicial authority may order a fuller and more particular statement."
The next question that must be decided is whether the factual allegations support a claim that a fiduciary relationship was established by reason of a formal legal relationship. The only arguable relationship that might be referred to here would be that of agent and principal
It is no doubt true that according to paragraph 3 of the complaint the college agreed to act in behalf of the plaintiffs in the collection of contributions and the provision of certain services concerning the presentation of the plaintiffs sculptural works. But this hardly elevates such a contractual arrangement into a fiduciary relationship. If that were the case, whenever a party enters into a contract to perform certain services or accomplish a particular task, it would thereby become an agent simply because in performing its contractual duties it acts on behalf of the other contracting party.
But that is the scenario in every contractual relationship and to say fiduciary relationships are thereby created would place unreasonable burdens on contract formation and the risks to be faced in the event of claimed breaches of contractual obligations.
The test as to whether, by contracting with someone, as an independent entity, one becomes an agent is set forth in cases like Tianti v. WilliamRavies Real Estate, Inc., 231 Conn. 690, 697 (1995), where the court said: "The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. . . . An independent contractor has been defined as `one who, exercising an independent' employment, contracts to do a piece of work according to his (her) own methods and without being subject to the control of his (her) employer, except as to the result of his (her) work."
In 41 Am.Jur.2d, "Independent Contractors" at § 11, p. 407, it says that many cases adopt the view that "one is to be regarded as an agent or an independent contractor according to whether he or she is subject to, or free from, the control of the employer with respect to the details of the work,", cf. Lassen v. Stamford Transit Co., 102 Conn. 76, 79-80
(1925).
There are simply no factual allegations in this complaint indicating the plaintiffs as members of the steering committee of the association CT Page 14640 had agreed upon and retained the right to control or interfere with how the college performed on its agreement with the association. In fact, the inference to be drawn from the complaint is to the contrary — the college agreed to perform certain activities and achieve a certain result independent of control as to the details and manner in which those objectives were to be achieved. The college was to administer any donations (para. 4), it was entitled to solicit and distribute funds because of its tax exempt status and it did these things on behalf of Sculpture 2000 International (para. 5). True, the college was to allocate funds received in accordance with the association's charitable purposes and carry out the steering committee's instructions (para. 8), but there is no indication that these "instructions" were anything more than a directive to achieve the general result bargained for in the agreement. In fact, monies were improperly distributed for the college's benefit and not that of the association without authorization or agreement of the association's steering committee. But there are no factual allegations to indicate the steering committee by formal agreement or actual practice retained any right to control the actual distributions let alone the details of how distributions were to be accomplished.
The court cannot find that a fiduciary relationship has been established under either aspect of the first aspect of the first test.
 (2)
The court will now try to apply the second test — can a fiduciary relationship be found by implication of law due to the factual situation surrounding the transactions and relationships of the parties to each other and the questioned transactions?
Many of the allegations of the complaint — apart from conclusory assertions — do not support a finding of a fiduciary relationship. If one looks at the reasoning that led to the result in Dunham
at 204 Conn. p. 31, and the factors noted in cases likeSimon v. Wilson, supra, at 684 N.E.2d at p. 797, most of the factual allegations fall short of meeting this test..
Paragraph 1 of the complaint indicates the affairs of the sculpture association are run by a steering committee. The three named plaintiffs were and are members of that committee and "remain active in the management and administration of" the sculpture association. The basis of the complaint is really set forth in para. 8. There, it is stated that monies were disbursed to the college for various reasons without the "authorization or agreement" of the steering committee. These allegations do not have the ring of a group of people (the plaintiffs) who are CT Page 14641 incapable of managing the association's affairs due to being inactive members of the association who were so dependent on the superior skills and on knowledge of the college that they could not intelligently agree to or authorize disbursement of funds now claimed to be the rightful assets of the association. There are no allegations of the college somehow being in a superior position or acting as a dominant party regarding these transactions.
But there is another consideration that must be examined by the court.
It is alleged that the president of the college, at all times relevant to this complaint, was also chairman of the sculpture association's steering committee and, in her capacity as chairman of that committee, she made the disbursements to her own college which are the subject of this compliant. This person is not an individual defendant and there is nothing to indicate her status as college president was unknown to other members of the steering committee. But it is alleged that the monies were disbursed without the authorization or agreement of other steering committee members. It can be reasonably inferred this was also done without their knowledge.
It can also be inferred that the college president's position as chairman of the steering committee gave her the ability to make these disbursements without that authorization or agreement by other steering committee members necessary to make such disbursement lawful and proper. In light of the alleged agreement between the parties that the college was to collect funds donated to the association, the fact that its own president had the power to disburse them in the manner described, put the college in a superior position to violate the disbursement policy of the association to its own advantage and thus abuse the confidence placed in the college which was acting through its college president in chairing the steering committee. The court is not, of course, concluding that the disbursements were, in fact, improper, it just is trying to give the complaint every favorable inference.
The motion to strike is denied.
 ___________________ Corradino, J.