**Danny Orona YBARRA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45349.**

Court of Criminal Appeals of Texas.

Nov. 22, 1972.

Michael McLeaish, Odessa, for appellant.

John Green, Dist. Atty., and J. A. (Jim) Bobo, Asst. Dist. Atty., Odessa, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a murder with malice conviction where the punishment was assessed by the jury at 99 years.

Initially, appellant challenges the sufficiency of the evidence to sustain the conviction.

The indictment charged the appellant with the murder of Israel Hinojos.[1]

Jesse Vellescas,[2] Hinojos' cousin, testified that on October 18, 1969, about 9:30 p. m., he was at a dance on the south side of Odessa. He was called outside to a 1955 brown and white Oldsmobile automobile where the appellant was seated in the rear. Several other men accompanied him. Vellescas related that the appellant was armed with a Springfield 303, which was identified as State's Exhibit No. One, and that the appellant pointed the rifle at him while talking about a fight in which the appellant's half-brother had been involved. Vellescas disclaimed any knowledge of such fight. The appellant vowed "to get" Israel Hinojos. During this conversation, Hinojos drove by and the appellant said, "Let's go get him," and then he and his companions drove off in pursuit of Hinojos.

Vellescas attempted to round up some of his "buddies", and, some twenty minutes later, when he arrived at his cousin's home, there was blood all over the porch.

Richard Hinojos, the deceased's father, testified he was in his house at 806 Foster Street about 9:30 p. m. on the date in question. He heard his son drive up and then he heard a shot which sounded like that of

---

1. The name is spelled in the approved record in this manner rather than Hinjosa.

2. This is the manner in which the name is spelled in the record.

a high-powered rifle. He ran to the front door and found his bleeding son on the porch. He saw another vehicle drive away.

The deceased's mother, who was also at home, generally corroborated her husband's testimony.

Dr. Wray D. Storey testified that the cause of death was a gunshot wound in the chest which, in his opinion, had been caused by a high-powered weapon. He expressed the opinion that the wound could have been caused by State's Exhibit No. One.

Mrs. Ike Williams of 1300 West Clements Street, Odessa, who lived a few blocks from 806 Foster Street testified that at 9:45 p. m. on October 18, 1969, a brown and white Oldsmobile ran into her chainlink fence destroying four sections; that, when she turned on her floodlights, she saw several men and heard them speaking Spanish. She later saw two of the men going down a nearby alley and then saw someone back the car out of the fence and drive away.

Linda Herrera, Mrs. Williams' neighbor, related that she had heard a noise about 9:45 p. m. on the date in question and then saw two men running down an alley carrying an object which appeared to be a gun.

Charles Jefferson, who lived next door to the appellant, found a rifle in his garden on the morning of October 19th. The rifle had not been there on the previous evening when he had cleaned his garden. He called the police. Detective Snyder recovered the rifle from the garden and he identified it as being State's Exhibit No. One.

Other State's evidence reflects that the Oldsmobile in question was found parked at the appellant's home when he was arrested at 11:45 p. m. on the night in question. It was dented and damaged. Vellescas testified it was not in this condition when he saw it. Paint samples taken from Mrs. Williams' fence and from the car matched.

The appellant offered no evidence.

The court charged on the law of principals and of circumstantial evidence.

■ Considered in the light most favorable to the jury's verdict, we deem the evidence sufficient to sustain the conviction.

Next, appellant contends "[t]he Trial Court erred in refusing Defendant's request for discovery."

■ He fails, however, to point to any one item of evidence for which he was denied discovery. The entire thrust of his argument is that he was not present at the pre-trial hearing on his motion for discovery in violation of Article 28.01, Vernon's Ann.C.C.P., which requires such presence. There is no showing that there was, in fact, a pre-trial hearing in the instant case as contemplated by Article 28.01, supra.

The record reflects that on January 11, 1971, the appellant filed a motion for discovery. It was not shown just when such motion was brought to the trial court's attention. The transcription of the court reporter's notes, found in the approved record and without objection, commences with the following: "Be it remembered that on the 22nd day of January, 1971 . . . and the following proceedings were had:" Such transcription opens with the proceedings being conducted in the court's chambers. A colloquy is reflected from which it is difficult to decipher what had actually transpired before that time.

At one point, appellant's counsel stated that motion for discovery had been set for a hearing "on January 20 or January 21 at eight-thirty." The court then responded that appellant "was not in attendance in Court at such hour of eight-thirty a. m. and did not in fact show up until approximately five minutes after nine on such date . . . .."

At the conclusion of the discussion in chambers concerning the discovery motion, the District Attorney announced, "we will give him everything we have got before the trial starts." After the jury was selected, appellant renewed his request for a hearing on his discovery motion, stating: ". . . We have not had a hearing on it . . . ." At this point, the court inquired if there was anything that had been requested by the motion which had not been furnished. Thereafter, a lengthy discussion between the court and the attorneys ensued at the conclusion of which appellant's counsel stated: "If you have given me everything that I asked for in my motion I am satisfied." Then, the trial commenced.

Thus, there is no showing that there was a pre-trial hearing under the provisions of Article 28.01, supra, at which appellant was not present.

Further, appellant contends the court erred in permitting the prosecutor, over objection, "to use language calculated to deny the Defendant equal protection of the law as guaranteed him by the 14th Amendment of the United States Constitution."

Appellant points out that he is a Mexican-American and that the prosecutor's use of the phrase "they people" in his jury argument was designed to "evoke racial prejudice." The appellant lifts the phrase in question completely out of context. In his argument to the jury, the District Attorney stated:

"MR. GREEN: You are what we sometimes, most of my assistants and I, my young assistants, refer to as the 'they people'. You have children, some of you do, you make, try to make an honest living, you work here in the County, you

have children, you have grandchildren, you raise your family right.

MR. McLEAISH: Objection, Your Honor. He is getting totally outside the evidence.

MR. GREEN: I am going to argue law enforcement, Your Honor.

THE COURT: I will overrule your objection."

No further relief was requested.

■ First, we observe that no objection was made on the grounds now urged on appeal. Further, the reference was to the jury, not to the appellant or his race. While the phrase in question appears in the approved record as "they people", it would appear that the prosecutor had reference to "lay people".

Appellant's contention is totally without merit.

■ Appellant's last ground of error is multifarious and presents nothing for review. See Article 40.09 § 9, Vernon's Ann.C.C.P.

■ In such ground, he complains of the court's charge on the law of principals contending that since he was not indicted as a principal he cannot be prosecuted as such. There is no merit to such claim. See Frias v. State, 376 S.W.2d 764 (Tex. Cr.App.1964). He also abstractly complains that he was denied compulsory process for witnesses. Washington v. Texas, 385 U.S. 812, 87 S.Ct. 123, 17 L.Ed.2d 54 (1966), is cited, but no argument is advanced as to any witness for whom he was denied compulsory process.

The judgment is affirmed.