Leo MULLEN & Dolores Mullen,
Appellants/Respondents,

v.

Richard DAYRINGER,
Respondent/Cross
Appellant.

No. WD 36375.

Missouri Court of Appeals,
Western District.

Dec. 24, 1985.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled
and Denied Jan. 28, 1986.

Application to Transfer Denied
March 25, 1986.

Peter J. Koppe, Kansas City, for Leo Mullen.

Gregory W. Vleisides, Kansas City, for Dolores Mullen.

John E. McKay, Kansas City, for Richard Dayringer.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

TURNAGE, Presiding Judge.

Richard Dayringer filed suit against Leo Mullen and his wife, Dolores, for damages arising from the malicious prosecution of a civil suit. The jury returned a verdict in favor of Dayringer against both Mullens for $35,960 actual damages and $100,000 punitive damages against Leo and $25,000 in punitive damages against Dolores. The court struck the $25,000 in punitive damages against Dolores and entered judgment on the remainder of the verdict.

On this appeal Leo and Dolores raise a number of points including the submissibility of the case, error in instructions, error in admission of evidence, and the amount of the verdict. Affirmed.

Dayringer appeals from the action of the court in striking the $25,000 punitive damages against Dolores. Reversed and remanded.

In September of 1971, the Mullens entered into a contract for the purchase of real estate owned by Dayringer and his wife. The real estate was described by metes and bounds and did not contain any call for acreage. After the Dayringers had signed the contract the Mullens inserted a clause requiring the Dayringers to make certain repairs to the house located on the real estate. Although this requirement was added after he had signed the contract, Dayringer testified that he undertook and did make the repairs.

On September 30, 1971, before the Mullens signed the contract, the real estate agent gave the Mullens a letter informing them that the property had been listed and advertised as containing nine acres, more or less, and that the survey had showed the property had 9.22 acres more or less. On October 6, 1971, the Dayringers executed a warranty deed to the Mullens, and again the description was by metes and bounds with no mention of the acreage.

On October 30, 1971, Leo Mullen wrote to the real estate agent stating that the tenants had moved from the house and had taken certain light fixtures and some door knobs. Mullen stated that when these fixtures had been replaced he would be ready to close the real estate deal. This letter apparently reflected the fact that when the deed was delivered $500 was withheld from Dayringer to assure that repairs were made to the house.

On December 9, 1971, Mullen wrote the real estate agent to complain that the property had been represented to him as containing nine and one-half acres and contended that the fence lines were actually three to four feet within the property he purchased. Mullen stated he would settle the matter with the Dayringers and the real estate company for $500. Mullen did not mention the repairs.

The matter was not settled and on December 14, 1971, Mullen wrote to the real estate agent stating there was a shortage in the number of acres from the amount represented to him and offered to settle the matter for $1,525.

On February 25, 1972, Leo and Dolores filed suit against the Dayringers and the real estate company. The suit sought $1,500 actual damages and $5,000 in punitive damages in Count I for misrepresentation by the real estate company as to the acreage and $3,000 actual damages against the Dayringers in Count II for failure to repair. The court directed a verdict in favor of the defendants on Count I and the jury found in favor of the Dayringers on Count II.

After the judgment was entered on the Mullens' suit, the Mullens' attorney failed to file a timely notice of appeal to this court. He did file an application to file a notice of appeal out-of-time which was denied. Thereafter, Leo Mullen filed 15 motions in the circuit court, 15 motions and notices of appeal in this court, and 4 notices of appeal and motions in the supreme court. These pleadings accused Dayringer of committing perjury in his deposition and accused his attorney of fraud by statements made in the opening statement in the Mullens' trial. All of these filings were

attempts to set aside the adverse judgment or to have the matter heard on appeal in either this court or the supreme court. All of these attempts were unsuccessful.

The 34 motions and notices filed by Mullen span a period of about four and one-half years.

Subsequent to the Mullens' filings Dayringer brought this suit against the Mullens for malicious prosecution in filing the law suit and in the 34 filings which took place subsequent to the judgment in that case. Dayringer testified that he had paid attorney's fees to defend the lawsuit and subsequent filings. He also testified he suffered mental anguish and humiliation as a result of the suit filed by the Mullens and in particular the accusations which were made in the filings subsequent to the judgment in that case. Dayringer's wife and father testified to his change in behavior after the Mullens' litigation was instituted.

■ The Mullens contend that the court should have directed a verdict in favor of Dolores because there was no evidence that she intended to prosecute any litigation against Dayringer or actively participated in any such litigation. On appeal it is well settled that the evidence is viewed in the light most favorable to the verdict. *Fowler v. Daniel*, 622 S.W.2d 232, 236 (Mo.App. 1981). Viewing the evidence in that light, Harold Mann, the original attorney for Dayringer in the suit brought by Mullen, testified that Dolores called him at least once and perhaps twice to discuss the law suit against Dayringer. From Mann's testimony the jury could infer that Dolores was familiar with the lawsuit. There was evidence from which the jury could find that Dolores attended the trial and sat at the counsel table. Haskell Imes, who represented the Mullens in their suit against Dayringer, testified that he filed the suit on behalf of Leo and Dolores. From this evidence the jury could conclude that Dolores was active in the prosecution of the suit against Dayringer, that she intended for the suit to be prosecuted, and that she participated by being at the counsel table during trial.

The Mullens next contend that Dayringer failed to make a submissible case as to either of them because there was no evidence to support a finding that they had committed a wrongful act intentionally or without just cause or excuse. In *Young v. Jack Boring's, Inc.*, 540 S.W.2d 887, 893[4] (Mo.App.1976), this court stated that recovery for malicious prosecution requires proof of 6 elements: 1) the commencement of an action against the plaintiff; 2) legally caused by the defendant; 3) terminated in favor of the plaintiff; 4) the absence of probable cause; 5) the presence of malice; and 6) damage to the plaintiff. In arguing Dayringer failed to make a submissible case, the Mullens focus on the absence of probable cause. In *Haswell v. Liberty Mutual Insurance Co.*, 557 S.W.2d 628, 633[4] (Mo. banc 1977), the court defines probable cause as follows:

[P]robable cause for initiating a civil action consists of a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law.

■ The evidence in this case was sufficient to support a jury finding that there were not sufficient circumstances to cause the Mullens to reasonably believe that under the facts the claim they asserted against Dayringer was valid. Mullen vacillated between a claim that Dayringer had not completed repairs and the claim of a shortage in acreage. Mullen asserted these claims separately and at different times. He promised to settle at one time if the damage inflicted by the tenant was repaired and at two other times demanded payment of money for a shortage of acreage without mention of the repairs.

The repairs which Mullen insisted on were for electrical fixtures taken by a tenant. There is no indication that Dayringer was in any way responsible for the tenant's action. These fixtures were not included as items in the contract of sale between

Mullen and Dayringer and Mullen makes no attempt to show why Dayringer should be responsible to replace these fixtures. As to the acreage, Mullen conceded in his letter that the newspaper ad listed the property as nine acres, more or less, yet contended that someone misrepresented the acreage at nine acres. Further, the description in the contract and deed did not call for any particular acreage. The letter given to Mullen before the deed was delivered stated the tract was listed at nine acres and the survey showed the property contained 9.22 acres, more or less. From the knowledge which Mann testified Dolores possessed of the lawsuit, the jury could infer that she knew all of these facts.

Further, Mullen's filing of the 34 pleadings subsequent to the entry of the judgment by the trial court display a lack of probable cause. All the pleadings were signed by Leo Mullen and most contained charges of fraud and perjury against Dayringer and his attorney. In one instance Mullen claimed Dayringer's attorney committed fraud by making a statement in his opening statement during the trial of the suit filed by Mullen. That claim well illustrates the tenor and lack of legal foundation displayed by all of the 34 pleadings.[1]

The establishment of want of probable cause involves the proof of a negative and slight proof thereof is all that is required to make a prima facie or submissible case. *Haswell, supra,* 557 S.W.2d at 633[1–3]. From the facts stated above it is apparent that Dayringer made a submissible case to show a want of probable cause for the institution of the suit against him by Leo and Dolores and for the filing of the 34 pleadings after the judgment in that case by Leo. When a lack of probable cause is shown the jury may infer malice. *Haswell, supra,* 557 S.W.2d at 635[7].

The Mullens next contend that the court erred in giving Instruction No. 11 which defined the term malicious according to MAI 16.01. The Mullens contend that *Sanders v. Daniel International Corp.,* 682 S.W.2d 803 (Mo. banc 1984), changed the law of malicious prosecution so that actual malice should have been submitted to the jury instead of the malice in law which is used in MAI 16.01. The Mullens also complain about the giving of Instructions Nos. 12 and 13. Those instructions authorize the award of punitive damages based on the definition of malicious as contained in Instruction No. 11. The Mullens argue that *Sanders* required the court to instruct on actual malice. The court in *Sanders* recognized that in *Haswell* the court had discussed adopting the Restatement (Second) of Torts definition of malice for malicious prosecution proceedings as a result of a civil suit. The court in *Haswell* declined to adopt the Restatement definition. *Haswell, supra,* 557 S.W.2d at 636. The court in *Sanders* gave its reason for adopting the actual malice standard:

> The passing years, the ever increasing problem of crime, and the need for effectively carrying out the public policy of urging citizens to aid in the prosecution of crime now mandates that we reach a different result with respect to malicious prosecution actions arising from a criminal proceeding.

*Sanders, supra,* 682 S.W.2d at 814[8].

It is clear that the court in *Sanders* changed the definition of malice only in cases arising from criminal proceedings and recognized that *Haswell* was the law with respect to malicious prosecution involving civil proceedings. *Haswell* approved the MAI 16.01 definition of malice in this type of case. *Haswell, supra,* 557 S.W.2d at 636. Thus, the trial court correctly gave MAI 16.01 and the instructions on punitive damages were correct in view of the proper use of MAI 16.01.

---

1. The 34 pleadings were signed only by Leo. Dolores testified that she did not have any knowledge that Leo was filing the pleadings and there is no evidence to indicate that she did. Leo did not testify. The nature and tenor of these post-judgment pleadings and Dolores' lack of knowledge of them explain the large disparity in the punitive damage awards against Leo and Dolores.

The Mullens complain of the admission of the testimony by Dayringer that he suffered from anxiety and depression following the institution of the suit against him by the Mullens including the 34 filings after judgment. The Mullens argue that such testimony was inadmissible without expert medical testimony to show a causal connection between the Mullens' action and Dayringer's complaints. During trial the Mullens did not object to the testimony by Dayringer concerning his anxiety, humiliation, and depression following the institution of the Mullens' suit. Absent such objection no error has been preserved for review. *Moschale v. Mock*, 591 S.W.2d 415, 420[10, 11] (Mo.App.1979).[2] Mental anguish is an element of actual damages in a suit of this kind. *Young, supra*, 540 S.W.2d at 897[16, 17].

The Mullens finally contend that the verdict was excessive and was the result of bias and prejudice on the part of the jury. Mere excessiveness, standing alone, does not establish that the verdict was the result of bias or prejudice. It must be shown that the verdict was glaringly unwarranted by the evidence, and in addition, the party complaining has the burden of showing some trial error or misconduct by the prevailing party responsible for prejudicing the jury. *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d 938, 945[16–18] (Mo.App.1978). There is no indication of any trial error or misconduct by Dayringer which would prejudice the jury against the Mullens. The Mullens also argue that the jury had no basis on which to assess punitive damages because the net worth of the Mullens was not shown. While the net worth of a party is admissible on the issue of punitive damages, there is no requirement that the net worth be shown. *Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700, 708[10] (Mo.App. 1978).

Dayringer appeals the action of the court in setting aside the $25,000 punitive damage award against Dolores. As stated, the evidence was that Dolores called Harold Mann when he represented Dayringer and discussed the pending suit the Mullens had against Dayringer. Mann also testified Dolores attended the trial of that case and sat at the counsel table. From these facts the jury could infer that Dolores was familiar with the events which had transpired prior to that suit being filed. It has been decided herein that the Mullen suit against Dayringer was filed without probable cause and that the issue of punitive damages was properly submitted to the jury as to both Leo and Dolores.

Once the trial court decided that the issue of punitive damages should go to the jury, then the matter is purely and peculiarly one for the jury's discretion and is not to be reversed except on a clear showing of abuse of discretion. *Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51, 58[17–19] (Mo. banc 1981). The trial court stated the amount of punitive damages was excessive, but the court could only set aside the verdict if it found an abuse of discretion on the part of the jury. The court found no abuse of discretion or other ground on which to set aside the verdict.

This court does not find an abuse of discretion in the action of the jury. No ground has been shown to justify the action of the court in setting aside the verdict against Dolores for punitive damages.

The judgment against Leo and Dolores Mullen for actual damages and the judgment against Leo for punitive damages is affirmed. The judgment setting aside punitive damages against Dolores is reversed and the cause remanded with directions to enter judgment in favor of Dayringer against Dolores for $25,000 for punitive damages.

All concur.

---

**2.** Mullen also complains of the refusal of the court to order Dayringer to submit to a mental examination. Rule 60.01(a) requires good cause to be shown to obtain such an order. The motion did not state any reason or ground for the exam, much less show good cause. The grant or denial of such a motion rests in the discretion of the trial court. *Grimm v. Gargis*, 303 S.W.2d 43, 48[6, 7] (Mo.1957). No abuse of discretion is shown.