John C. NEAL, Jr.,
Appellant–Respondent,

v.

Rosemary SPARKS, Personal Representative of the Estate of Lewis O. Girdner, Deceased, and Mary Drennan, Respondents–Appellants.

No. WD 40011.

Missouri Court of Appeals,
Western District.

June 27, 1989.

Robert L. Shirkey, and James M. Slone, Kansas City, for appellant-respondent.

Don Chapman, Jr., Chapman, Cowherd, & Turner, P.C., Chillicothe, for respondents-appellants.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

CLARK, Judge.

John C. Neal, Jr., sued Lewis O. Girdner, now deceased, and Mary Drennan seeking to recover title to or to impose a constructive trust on land in Livingston and Caldwell Counties which Neal had earlier conveyed to Drennan, a straw party for Girdner. The claim was based on Neal's allegations that the title transfer was a security arrangement in a composition with Neal's creditors and that he was due an accounting and reconveyance of the land. Girdner filed a counterclaim alleging that multiple suits filed by Neal on the claim constituted malicious prosecution and he sought damages. The trial court found for Girdner on Neal's claims and for Neal on Girdner's counterclaim. This appeal and cross-appeal followed.

The issues in the appeal and cross-appeal require a detailed recitation of the facts, supplemented by reference to two previous opinions delivered by this court in the tortuous history of this litigation.[1]

The conveyances from which this litigation emanated were given by Neal, and his former wife Karlene, on August 22, 1974. Nine tracts of farmland in Livingston and Caldwell Counties were transferred by the Neals to Mary Drennan, the unmarried sister of Girdner. At the time, Neal was in distressed financial circumstances owing particularly to delinquency in payments on a real estate mortgage and the judgment granted Karlene February 14, 1974 in a dissolution of marriage suit.

The real estate mortgage dated from 1969 when Neal borrowed $165,000 from the John Hancock Insurance Company and executed a deed of trust on farmland. As of October 19, 1973, payments on the note were delinquent and the John Hancock Company commenced foreclosure. Neal discussed his problem with Girdner who agreed to buy the mortgage note for the purpose of giving Neal a period of time to improve his financial status. When Girdner bought the note November 6, 1973, the balance owed was $155,762.72. Taxes for 1972 on the property were overdue and unpaid and 1973 taxes were due.

Although Girdner did receive the proceeds from the sale of some crops and equipment for the account of Neal after November 6, 1973, it was Girdner's claim that as of August 1974, Neal was delinquent on his note payments and had also permitted judgment liens to accrue against the property. On August 2, 1974, Girdner commenced foreclosure.

Neal was also beset at the time by problems of a judgment entered February 14, 1974 in a dissolution of marriage suit. In that case, Karlene Neal had been awarded a 40% interest in the farmland and equipment, as well as child support, and executions were issued to collect on the judgment. In the summer of 1974, Karlene caused the sheriff to execute on crops planted on the Neal farms.

Purportedly to settle Neal's distressed financial affairs, he and Girdner entered into an oral agreement on August 22, 1974, the result of which has been the protracted litigation extending to the present date. To the extent that performance under the agreement has been documented, it is undisputed that Neal and Karlene Neal, his then divorced wife, executed quit claim deeds conveying all of Neal's farms to Mary Drennan. In exchange for her signature to the deeds, and presumably in satis-

1. *Neal v. Drennan*, 640 S.W.2d 132 (Mo.App. 1982); *Neal v. Girdner*, 725 S.W.2d 924 (Mo. App.1987).

faction of her share of marital property as decreed by the court, Karlene was paid $28,500 by Girdner, who also paid $1164.06 to the circuit clerk as costs in the dissolution action and an accumulated sum of $1450.00 in attorney fees incurred by Neal. Later, Girdner paid $17,581.81 in real estate taxes due on the Neal farms and to release liens against the farms filed by Neal's creditors.

Soon after the August, 1974 deeds had been delivered and recorded, a dispute arose as to whether Neal was entitled to retain possession of any of the farms. Neal understood the agreement to be that he would continue farming operations pending sales of any of the land or equipment. Girdner claimed that the delivery of the deeds entitled him to possession. On behalf of Girdner, Mary Drennan instituted an unlawful detainer action against Neal and on April 30, 1975 she obtained a judgment against Neal by default.

The dispute over the terms of the oral agreement also prompted Neal to file suit against Girdner on March 28, 1975 in Livingston County (Neal One). In that suit, Neal claimed the August, 1974 deeds had been procured by fraud and undue influence on the part of Girdner. Neal One was dismissed by the circuit court June 12, 1975 when Neal failed to respond to an order that he make his petition more definite and certain.

The dismissal of Neal One was followed, somewhat incongruously, by Neal's execution of a document on June 16, 1975 entitled, "Agreement For Settlement And Release." Neither Girdner nor Drennan signed the "agreement" nor was provision made for them to do so. Neal purported by the document to release all of his claims, as asserted in Neal One, arising out of the 1974 deeds in return for payment by Girdner later shown by the evidence to have been in the amount of $4500.00. Despite the absence of any signature by Girdner to the "agreement," a recitation was included which obligated Girdner to account to Neal for any amounts by which proceeds from the sale of the land deeded exceeded Néal's debts to Girdner.

In late 1975 and early 1976, several of the tracts of land deeded by Neal in 1974 to Drennan were sold and conveyed by Drennan, on behalf of Girdner, in arms length transactions to third parties not interested in the Neal–Girdner transactions. Later, Drennan conveyed the remaining tracts to Girdner. These transactions were followed by the next suit (Neal Two) filed May 7, 1977 in Livingston County.

In that action, Neal sued Drennan and Girdner seeking declaration of a resulting trust on the tracts Drennan had conveyed to Girdner. On motion by Girdner, the trial court dismissed the case against him, reserving for trial the claim against Drennan. The trial court based that disposition on the ground that dismissal of Neal One precluded a second suit by Neal against Girdner on the same cause of action. The court then proceeded to try Neal's case against Drennan finding for Neal and against Drennan and declaring a resulting trust in the property. Drennan appealed that judgment and Neal appealed the dismissal of Girdner. In *Neal v. Drennan*, 640 S.W.2d 132 (Mo.App. 1982), the court held that Girdner was not entitled to assert the bar of res judicata based on the involuntary dismissal of Neal One because it was not the same cause of action against the same party.[2] Rule 67.-03; *Denny v. Mathieu*, 452 S.W.2d 114 (Mo. banc 1970). Because Girdner was an indispensable party in Neal's suit against Drennan, the judgment for Neal was also reversed and the case was returned for a new trial against Girdner and Drennan.

---

**2.** The conclusion that Neal One and Neal Two were not the same causes of action was based on variances in the pleading allegations which appear, as to the allegations in Neal One, the product of a mistake of facts by Neal's attorney. In Neal One, it was alleged that the tracts of land were conveyed to Girdner by Neal prior to entry of judgment in Neal's divorce case. Neal Two alleged title transfers to Drennan after the divorce judgment. No evidence in any of the proceedings suggests that the allegations in Neal One were accurate or that any conveyances, except those made to Drennan in August, 1974, were challenged. The consequence that Neal's cause against Girdner was reinstated only because of mistakes in the original petition does not alter the validity of the decision in *Neal v. Drennan, supra.*

The trial in Neal Two of the cause against Drennan, which preceded the ultimate reversal of the judgment on appeal referred to in the previous paragraph, was conducted May 29, 1980 and the court announced its judgment in favor of Neal and against Drennan on July 25, 1980. Between those dates Neal filed a new suit against Girdner and Neal's former attorney, Al White, in Clay County (Neal Three). To the extent material here, Neal claimed in that suit the existence of a conspiracy between Girdner and White designed to procure from Neal the 1974 deeds to Drennan, all with the purpose of cheating and defrauding Neal. At the time of filing Neal Three, as the foregoing recapitulation of proceedings has shown, Neal Two was still pending in Livingston County awaiting disposition of the appeal. That cause of action and the suit in Clay County presented essentially the same claims originating in the dispute over the 1974 deeds. Accordingly, the court in Clay County dismissed Neal Three as duplicative of the action already pending in Livingston County.

As was noted above, the opinion in the first of Neal's appeals to this court resulted in the remand of Neal Two to the circuit court of Livingston County for trial. The mandate for that disposition was filed November 18, 1982. A trial did not follow, however, because on September 16, 1983, Neal voluntarily dismissed Neal Two. Concurrently, Neal refiled substantially the same suit in Clay County (Neal Four). In that action, Neal sought reconveyance to him of the lands deeded to Drennan in 1974, an accounting of sums Girdner had realized from the sale of some of the tracts and from other sources, the imposition of a resulting trust and damages.

Neal Four did not long survive. As an action affecting the title to real estate in Livingston and Caldwell Counties, venue of Neal Four could not lie in Clay County. The court dismissed the case December 30, 1983.

The suit which is the subject of the present appeal was filed by Neal in Caldwell County June 27, 1984 (Neal Five). In this case, Neal reasserted his previous claims against Girdner and Drennan and also included as defendants the persons and a corporation to whom conveyance of part of the land had been made by Drennan in the third party sales mentioned earlier. Neal again claimed the right either to recapture title to those properties or to impose a constructive trust on the land in his favor. The claims against Girdner and Drennan were severed from those against the other defendants and as to those defendants, the third party grantees, the court entered summary judgment against Neal. That disposition was affirmed by this court in *Neal v. Girdner*, 725 S.W.2d 924 (Mo. App.1987). The cause was remanded for trial of Neal's suit against Girdner and Drennan and Girdner's counterclaims against Neal. Trial of those issues was to the court sitting without a jury. The court entered findings and conclusions and entered judgment for defendants on Neal's petition counts and in favor of Neal on Girdner's counterclaim. This appeal and cross-appeal followed.

## NEAL'S APPEAL

Neal advances what purports to be one point of alleged error in his appeal. He contends that the findings of fact entered by the trial court are against the weight of the evidence and that the conclusions of law dependent on those findings constitute erroneous applications of law. In violation of Rule 84.04(d), the point fails to say wherein and why the findings and conclusions are in error. The argument portion of Neal's brief is no more informative as to any specification of error, but merely discusses how the findings do not coincide with Neal's view of the evidence.

In the circumstances of a brief in this form, and recognizing the implications from findings of fact in a bench-tried case, we can do no more than examine the record to determine whether the judgment is supported by substantial evidence, is not against the weight of the evidence and is neither an erroneous declaration nor application of the law. *Southern Missouri Savings and Loan Ass'n. v. Thomas*, 754

S.W.2d 937, 940 (Mo.App.1988). With regard to the weight of the evidence, this court does not reweigh the evidence but determines if there is sufficient evidence to support the findings after considering the evidence in the light most favorable to the party prevailing below, giving that party the benefit of all reasonable inferences and disregarding the other party's evidence except as it may support the judgment. *Morrison v. Jack Simpson Contractor, Inc.,* 748 S.W.2d 716, 718 (Mo.App.1988).

The question of evidentiary sufficiency is, of necessity, reviewed in the context of the legal theory on which Neal bases his claim to relief. As to this, the pleadings below and the brief here are less than explicit. Neal makes repeated reference to the theory of constructive trust asserting, with respect to the conveyances made to Drennan in 1974, that a trust should be judicially imposed on those properties and that they should eventually be retransferred to him. As the following discussion will demonstrate, the theory of constructive trust is not viable under the pleading and proof in this case.

A constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, the plaintiff who seeks the aid of equity, has been wrongfully deprived of or has lost some title. *Sassenrath v. Sassenrath,* 750 S.W.2d 95, 98 (Mo.App.1988). Constructive trusts are based upon an actual or constructive fraud. *Iota Management Corp. v. Boulevard Investment Co.,* 731 S.W.2d 399, 414 (Mo.App.1987). To establish an implied or constructive trust, an extraordinary degree of proof is required. The evidence must be so clear, cogent, unequivocal and positive as to banish doubt and so convincing that no reasonable doubt can be entertained of its truth. *McFarland v. Braddy,* 560 S.W.2d 259, 263 (Mo.App.1977).

Neal has neither pleaded nor proved any actual fraud practiced by Girdner. The pleading and proof showed, beyond question, that Neal repeatedly approached Girdner for financial aid and ultimately transferred the real estate to Girdner's nominee as a condition to obtaining current and future advances from Girdner. The only claim Neal makes which even approaches an allegation of fraud is that he reposed confidence in Girdner as a "father" figure and that Girdner, despite that relationship, failed to render an accounting to Neal and refused to reconvey any of Neal's farms. The most which may therefore be said of proof of fraud, an essential prerequisite to imposition of a constructive trust, is that Neal claimed constructive fraud because Girdner abused Neal's confidence and trust.

The trial court expressly found:

The relationship and financial dealings between John C. Neal, Jr. and Lewis O. Girdner did not create a confidential relationship wherein Girdner stood in the position of Neal's fiduciary or confidant.

The evidence supported this finding. Girdner testified that he did not regard Neal as an adopted son, which he was not, that he dealt with Neal as a business adversary and under protest most of the time and that Neal was constantly in debt to Girdner and always trying to borrow more. The concept that Girdner was "like a father" to Neal was entirely Neal's subjective opinion. The trial court was entitled to believe Girdner in the matter and reject Neal's evidence, the consequence of which was to destroy any factual basis on which to prove constructive fraud.

Moreover, to prove a confidential or fiduciary relationship it is necessary to show that one party because of age, state of health, illiteracy, mental disability or ignorance has become subservient to the dominant will of another, that the property of the subservient person has come into the possession or management of the dominant person, that the subservient person has surrendered his independence, and that there has been manipulation of the actions of the subservient party who has placed his trust and confidence in the dominant person. *Chmieleski v. City Products Corp.,* 660 S.W.2d 275, 294 (Mo.App.1983). Ordi-

narily, there is no confidential or fiduciary relationship between debtor and creditor. *Centerre Bank of Kansas City v. Distributors, Inc.,* 705 S.W.2d 42, 53 (Mo.App. 1985). Here, Neal did not allege or prove that he was subservient to Girdner because of age, state of health, illiteracy, mental disability or ignorance or that he was manipulated by Girdner. The evidence merely showed that Neal borrowed money from Girdner and in return, conveyed the real estate to Girdner's nominee. This was an insufficient factual ground to support imposition of a constructive trust even if it be assumed, as Neal's argument claims, that Girdner breached his oral agreement to render Neal an accounting and to settle accounts by reconveying any or all of the real estate.

If it be recognized that Neal's only attack on the judgment below is the failure of the court to decree some ownership interest in Neal vested in the properties transferred by the 1974 decree,[3] then the only theory available, apart from the claim to a constructive trust, is a contention that the deeds amounted to equitable mortgages. In fact, that theory more closely conforms to Neal's claim that the deeds were given only as security.

 A conveyance, absolute on its face is presumed to be a deed and not an equitable mortgage. The burden of proof is on the party who seeks to establish an equitable mortgage, and that proof must be beyond a reasonable doubt by clear, cogent and convincing evidence. Whether a conveyance is a deed or an equitable mortgage is determined by the intent of the parties. *Webb v. Harrington,* 504 S.W.2d 252, 261 (Mo.App.1973).

 The trial court in this case concluded that the 1974 deeds did not constitute equitable mortgages. That finding is supported by the following facts recognized to indicate an intent by the parties that a conveyance absolute on its face is intended as a deed and not an equitable mortgage. The real estate taxes on the farms were due and Girdner paid them. Girdner obtained insurance on the properties and paid the premiums. Girdner paid additional sums to or for the benefit of Neal concurrently with the execution and delivery of the deeds and took no note or evidence of indebtedness from Neal for those payments. Girdner already had initiated foreclosure of the deed of trust he held on the farms, but terminated that action upon delivery of the deeds to Drennan. Girdner took possession of the land including an ouster of Neal by judicial process. Girdner made permanent improvements to the properties.

The foregoing evidence amply supported the trial court's finding that the 1974 conveyances were deeds absolute and not equitable mortgages. That conclusion is reinforced when it is recognized that Neal could only prevail if his evidence proved the deeds to have been equitable mortgages beyond a reasonable doubt and by clear, cogent and convincing evidence.

The trial court's judgment was not against the weight of the evidence and was not an erroneous application of the law and correctly found in favor of defendants Lewis O. Girdner and Mary Drennan and against plaintiff John C. Neal, Jr.

## GIRDNER'S APPEAL

Referring back to the history of the litigation laboriously recited at the beginning of this opinion, the counterclaim by Girdner for malicious prosecution rests upon Neal's commencement of Neal Three in Clay County at a time when Neal Two was still pending in Livingston County and upon the commencement of Neal Four in Clay County where venue was improper. Girdner's evidence in support of his counterclaim consisted of proof of the suits and the contents of the various petitions and evidence that

---

3. Under the facts described, Neal could have claimed that an accounting due from Girdner would have revealed the overplus in value of the lands above the debts Neal owed Girdner. Such a claim would be for a sum of money and not for an interest in the real estate. The trial court found, however, that Girdner paid full value for the farms by cancellation of Neal's debts and by advancing additional sums. Neal makes no argument here that such a finding was not supported by the evidence.

his expense for attorney fees in Neal Three was $10,459.67 and similar expenses incurred in defense of Neal Four amounting to $7,888.03. Neal offered no evidence in defense against the counterclaims. The trial court found that the suits were commenced by Neal in good faith on the basis of justifiable claims against Girdner and that Girdner could not recover on his counterclaims.

A recovery for malicious prosecution requires proof of: (1) The commencement of an action against the plaintiff, (2) Legally caused by the defendant, (3) Terminated in favor of the plaintiff, (4) The absence of probable cause, (5) The presence of malice, and (6) Damages to the plaintiff as a consequence. *Young v. Jack Boring's, Inc.*, 540 S.W.2d 887, 893 (Mo. App.1976). Probable cause for initiation of a civil action consists of a belief in facts alleged based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law. *Haswell v. Liberty Mutual Insurance Co.*, 557 S.W.2d 628, 633 (Mo. banc 1977). The establishment of want of probable cause involves the proof of a negative and slight proof thereof is all that is required to make a prima facie or submissible case. *Mullen v. Dayringer*, 705 S.W.2d 531, 535 (Mo.App. 1985). Once want of probable cause is made out, malice may be inferred. *Young v. Jack Boring's, Inc.*, 540 S.W.2d at 896.

The only element of Girdner's claim for malicious prosecution which was not conclusively proved by documentary evidence was the presence or absence of probable cause for Neal to believe he had valid claims against Girdner upon which recovery could be obtained in the two suits filed in Clay County. The finding by the trial court on that issue, which did not address particularly the Clay County cases, recited: "All suits were filed by John C. Neal, Jr. in good faith and belief he had justifiable claims against Lewis O. Girdner." In his cross-appeal, Girdner contends this finding was not supported by substantial evidence and was against the weight of the evidence. He also asserts the uncontroverted evidence showed Neal did not have good cause to believe the Clay County suits could validly be prosecuted and that those cases were not filed in good faith.

The evidence on the subject of the Clay County suits was essentially documentary and presented no contested fact issues for that reason, and also because Neal produced no countervailing evidence and he offered no affirmative defenses. Girdner's counterclaim was supported by the following facts. When Neal commenced his first suit against Girdner in Clay County, Neal Three, he was still prosecuting the prior suit in Livingston County, Neal Two. That continuing prosecution of Neal Two consisted of efforts on appeal to overturn the dismissal of Girdner as a defendant and to preserve Neal's judgment against Drennan. The duplicative nature of Neal Three was judicially determined when the court in Clay County sustained Girdner's motion to dismiss Neal Three on that ground.

Neal's efforts in the prosecution of Neal Two on appeal were, as noted earlier, successful and that case was returned to the circuit court in Livingston County for a new trial on Neal's claims against Girdner and Drennan. Instead of proceeding to trial in Livingston County on Neal Two, however, Neal dismissed that case, which had been pending more than six years, he abandoned the products of discovery and definition of issues achieved during that time and filed Neal Four in Clay County. That cause suffered the same fate as Neal Three because venue did not lie in Clay County to try issues involving title to real estate in Caldwell and Livingston Counties.

The facts of the case so stated provide no basis for a finding that either Neal Three or Neal Four were commenced in a good faith belief that recovery of valid claims against Girdner could be accomplished in those suits. That being so, it necessarily follows that the suits were commenced in bad faith, from which malice is implied, and that judgment should have been rendered for Girdner on his counterclaim.

Neal in his brief presents two arguments in support of his contention that Neal Three and Neal Four were not commenced in bad faith but upon probable cause to believe he had grounds to sue Girdner in Clay County. He first says that when Neal Three was filed, the disposition of Neal Two on appeal had not been decided and therefore Girdner was not a party against whom Neal could expect recovery in the Livingston County case.

Even were it arguable that Neal could in good faith take inconsistent positions in the appeal of Neal Two and in commencing the same suit against Girdner in Clay County, the suit in Clay County served no legitimate purpose, regardless of the outcome in the appeal of Neal Two. This follows because the question in the appeal of Neal Two was whether the disposition of Neal One in Girdner's favor barred Neal from suing Girdner again on the same claim. Had Girdner prevailed on that issue, Neal's maintenance of Neal Two and Neal Three would have been equally foreclosed. A contrary result would not have allowed the continued prosecution of Neal Three which was, as the trial court found, the same cause Neal was pursuing against Girdner in Livingston County.

The second argument Neal makes attempts to justify the filing of Neal Four on the ground that it was a new action evidenced by the addition of parties and the inclusion of claims for attorney malpractice, fraud, misrepresentation, conspiracy, libel and conversion and a claim for declaratory judgment. He also says the question of whether venue for the suit lay in Clay County was one on which equally competent attorneys could reach different conclusions.

It is true that some counts in Neal Four did survive the dismissal order because they did not directly affect the titles to the Caldwell County and Livingston County land. Even those counts were ultimately dismissed by Neal, however, when he chose to file Neal Five in Caldwell County. Moreover, those counts were never shown to have any substantive merit even when included in Neal Five. Throughout the course of the five suits, Neal's consistent and predominant claim has been that title to the properties he conveyed to Drennan in 1974 should be restored. The addition of other parties and different petition counts did not realistically differentiate Neal Four from any of the other suits Neal filed against Girdner.

Neal's other argument that the issue of whether venue lay in Clay County was legally debatable is not available for consideration in this case. That contention would depend on proof that Neal's attorney was responsible for choosing to commence suit in Clay County based on his opinion of the venue issue. Neal has not alleged or proved that he relied on advice of counsel as the ground for commencing Neal Four and therefore he may not now rely upon that proposition as an affirmative defense.

■ An affirmative defense contemplates additional facts not included in the allegations necessary to support plaintiff's case and avers that plaintiff's theory of liability, even though sustained by the evidence, does not lead to recovery because the affirmative defense allows the defendant to avoid legal responsibility. *Detling v. Edelbrock*, 671 S.W.2d 265, 271 (Mo. banc 1984); *World Enterprises, Inc. v. Midcoast Aviation Serv., Inc.*, 713 S.W.2d 606, 608–09 (Mo.App.1986).

In this case, Neal pleaded no affirmative defense, he presented no testimony that he conferred with counsel as to the propriety of filing Neal Four in Clay County and he offered no evidence that his attorney even explored the subject, as the brief here now undertakes to discuss. If any such defense was available, it was waived.

The evidence of Girdner's damages occasioned by the duplicative litigation instigated by Neal was limited to proof of attorney fees paid in defense of the Neal Three and Neal Four suits. No issue was made as to the necessity for or reasonableness of those fees, $10,459.67 in Neal Three and $7,888.03 in Neal Four. Having concluded that the judgment entered by the trial court was not supported by the evidence as to Girdner's counterclaim and that judgment thereon should be entered in favor of

Girdner pursuant to his cross-appeal, we enter the judgment which ought to be given. Rule 84.14.

The judgment in favor of respondents Lewis O. Girdner and Mary Drennan and against John C. Neal, Jr., on the petition of John C. Neal, Jr., is affirmed. The judgment in favor of John C. Neal, Jr., on the counterclaim of Lewis O. Girdner is reversed and the cause is remanded with direction that judgment be entered in favor of Rosemary Sparks, Personal Representative of the Estate of Lewis O. Girdner, deceased, and against John C. Neal, Jr., in the amount of $18,347.70 and costs.

All concur.