Michael R. HENRY, Director of the Division of Child Support Enforcement, Department of Social Services, Appellant,

v.

IMPACT MANAGEMENT,
INC., Respondent.

No. 17125.

Missouri Court of Appeals,
Southern District,
Division One.

April 25, 1991.

Janet Garrett, Springfield, for appellant.

Peter H. Rea, Branson, for respondent.

CROW, Judge.

Plaintiff Michael R. Henry, Director of the Division of Child Support Enforcement of the Department of Social Services of the State of Missouri, sued defendant Impact Management, Inc., for allegedly violating

§ 454.505.10.[1] Plaintiff's petition averred defendant discharged an employee, Gary W. Levingston, because plaintiff issued an order directing defendant to withhold $324.98 from Levingston's monthly wages and remit said sum to a court in which an order had been entered requiring Levingston to pay child support.

Defendant's answer admitted defendant discharged Levingston, but averred it was for reasons other than the wage order.

The case was tried to the court, which found, *inter alia:*

> "All evidence, including that presented by plaintiff indicate to the Court that Levingston was discharged for lack of production and for conducting his personal business at company time and expense. The Court has heard no evidence and has found no facts indicating that Levingston was discharged as a result of the pay out order."

The court entered judgment for defendant.

Plaintiff appeals, maintaining the trial court erred in (a) receiving inadmissible evidence, (b) finding defendant had overcome the statutory presumption that Levingston was discharged as a result of the wage order, and (c) allowing defendant's lawyer to "continuously demean and harass" Levingston during his testimony and "introduce hearsay as questions."

Plaintiff issued the wage order November 4, 1986. Defendant received it November 5, 1986. Defendant discharged Levingston November 17, 1986.

Plaintiff presented Levingston as a witness in the trial court. Levingston testified defendant hired him May 22, 1986, as a "customer service representative and collector." His duties were primarily making telephone calls and collecting money due defendant. He also answered letters to defendant from lawyers and appeared in court as a witness for defendant in collection suits. His immediate supervisor was Joe Van Gilder.

Levingston's starting salary was $550 every two weeks. It was raised to $575 "after a ninety-day probation period." Levingston avowed he was told numerous times by his supervisor he was "doing a good job." Levingston denied ever receiving a reprimand.

Levingston testified he was discharged November 17, 1986, in the office of Joe Villines, Jr., defendant's "in-house counsel." Present, in addition to Levingston and Villines, were Van Gilder and Patricia Martin, defendant's "company secretary."

Recalling the meeting, Levingston quoted Van Gilder as saying the termination was because Levingston's performance was not what Van Gilder expected it to be. Asked by plaintiff's lawyer whether the meeting was recorded, Levingston responded, "Not to my knowledge, no."

On cross-examination, Levingston conceded Van Gilder "mentioned something about personal [phone] calls" during the meeting. When the meeting ended, Levingston was given a list of calls "that was taken out of my check."

At trial, defendant's lawyer handed Levingston Exhibit A and asked whether it was a list of phone calls he made. Levingston answered, "Apparently, yes." The exhibit covered the period from July 14 to November 10. It showed 30 calls to the

---

1. References to statutes are to RSMo 1986. Section 454.505.10 reads:

> "An employer shall not discharge ... an employee as a result of an order to withhold and pay over certain money authorized by this section. If any such employee is discharged within thirty days of the date upon which an order to withhold and pay over certain money is to take effect, there shall arise a rebuttable presumption that such discharge was a result of such order. This presumption shall be overcome only by clear, cogent and convincing evidence produced by the employer that the employee was not terminated because of the order to withhold and pay over certain money. The director is hereby authorized to bring an action in circuit court to determine whether the discharge constitutes a violation of this subsection. If the court finds that a violation has occurred, the court may enter an order against the employer requiring reinstatement of the employee. Further, the court may enter judgment against the employer for the back wages, costs, attorney's fees, and for the amount of child support which should have been withheld and paid over during the period of time the employee was wrongfully discharged."

home phone of Kathy Bowen, Levingston's ex-wife. The exhibit also showed 33 calls to the phone of Ms. Bowen's employer. Levingston admitted he made the calls on "company time" and had no permission from defendant to make them. The trial court received Exhibit A in evidence over plaintiff's "hearsay" and "no foundation" objections.

Levingston remembered inquiring whether he was "getting fired because of the garnishment." Asked whether Van Gilder explained the "garnishment" had nothing to do with it and that the firing was because of Levingston's "job performance," Levingston answered, "Possibly, yes." Levingston conceded Van Gilder said one employee was making 500 business calls a month, while Levingston was making only 125.

During his cross-examination of Levingston about the termination meeting of November 17, 1986, defendant's lawyer utilized a typewritten document (Exhibit C) purporting to be a transcript of that meeting. Defendant's lawyer read Levingston statements attributed by the exhibit to Van Gilder, to Villines, and to Levingston, respectively, and asked Levingston whether the statements were in fact made. Levingston admitted many of the statements were made, said he did not recall certain others, and conceded still others were possibly made. At the end of that phase of the cross-examination we find this:

"Q The chronology of the questions and answers is just like I read it to you, wasn't it?

A Basically, yes.

Q All right. Anything—anything in there from the time you came in,—from the time you came in, was there anything that I didn't include in the way of conversation?

A No."

Defendant's lawyer offered Exhibit C in evidence "for whatever value it is, just for a helpful tool for the Court." Plaintiff objected, whereupon defendant withdrew the offer. At the end of the trial, defendant reoffered Exhibit C. This dialogue ensued:

"[Plaintiff's lawyer]: . . . some of it is in evidence against my objection, and I certainly object to this. It's hearsay. The person that prepared that document wasn't in court today to testify, and additionally, there was no foundation laid to admit that into evidence, and I objected to the way he did work some of it in.

The Court: I'm going to admit it solely so I'll have it available to myself when I make the proposed findings of facts, for that reason only. . . . It will be admitted."

Plaintiff's first point relied on avers the trial court erred in receiving Exhibit A (the phone call list) and Exhibit C (the purported transcript) in that both documents were hearsay and no proper foundation was laid for either of them.

■ As noted earlier, Levingston acknowledged Exhibit A was "[a]pparently" a list of phone calls he made at his place of work. He admitted phone numbers on the exhibit were, respectively, those of his ex-wife's home and place of employment. He also admitted he had no permission from his superiors to make personal calls on "company time." When defendant discharged Levingston the cost of the personal calls was deducted from his final paycheck.

Plaintiff's contention, as we grasp it, is the trial court should have rejected Exhibit A because the person who prepared it was not present "to testify that the exhibit was authentic."

The contention is meritless. The only data even arguably supplied by Exhibit A that was not also furnished by Levingston's testimony was the precise number of personal calls and the dates they were made.

In *Gardner v. Robinson*, 759 S.W.2d 867 (Mo.App.1988), a witness' testimony was substantially the same as the matters shown on a document received in evidence. Denying a contention that admission of the document was reversible error, this Court held the document was cumulative and added nothing to earlier evidence. *Id.* at 868[2]. In so deciding, this Court pointed

out that in a judge-tried case latitude is allowed in the admission of evidence, and even where an error is made in receiving it, such error is ordinarily held nonprejudicial unless the judge relied on such evidence in arriving at his findings. *Id.* at [1]. This is consistent with the principle that a trial judge, sitting without a jury, is presumed to give no weight to incompetent evidence. *Pike v. Pike,* 609 S.W.2d 397, 403[10] (Mo. banc 1980).

In the instant case Exhibit A was essentially cumulative to Levingston's testimony. Consequently, receipt of Exhibit A in evidence, even if error (an issue we need not decide), was not prejudicial.

■ As to Exhibit C, we note that during Levingston's *direct examination* plaintiff's lawyer questioned him about what was said at the termination meeting. Defendant's lawyer had the right to cross-examine Levingston about the matters to which he testified on direct examination. § 491.070, RSMo 1986; *Louis Steinbaum Real Estate Co. v. Maltz,* 247 S.W.2d 652, 655[2] (Mo.1952).

Levingston admitted many of the statements shown on Exhibit C were made during the termination meeting by the persons to whom the exhibit attributed them. Levingston also admitted the "chronology of the questions and answers" was "basically" as shown on the exhibit. Furthermore, he conceded nothing was said during the termination meeting that was not included in the exhibit.

The trial court received Exhibit C so it would be available when that court made findings of fact. Consistent with *Pike,* we assume the trial court considered only those passages from Exhibit C confirmed by Levingston's testimony. So considered, Exhibit C could not have prejudiced plaintiff. Plaintiff's first point is denied.

■ Plaintiff's second point concerns Exhibit B, identified by Levingston as his "confidential resume." It showed, among other things, that he held a B.S. degree in accounting from the University of Texas, Arlington, with a 3.5 grade point average. On cross-examination, defendant's lawyer asked Levingston whether he held that degree from that university. Levingston responded (without objection by plaintiff), "I never went to Arlington." Later, Levingston admitted, "I don't have a B.S. in accounting." Asked by defendant's lawyer whether he ever lied on a resume, Levingston answered: "Yes, I've lied on a resume. Everyone lies——."

The trial court received Exhibit B in evidence over plaintiff's objection that it was irrelevant.

The trial court's findings included this:

"Levingston provided defendant a false and misleading resume at the time of his hiring. There was no evidence presented that he was discharged as a result. However, such action on his part does affect his credibility in the eyes of the Court."

Plaintiff's second point avers Exhibit B was irrelevant and prejudicial to plaintiff, hence its admission was reversible error.

Levingston's testimony that he never received a reprimand and had been told by his supervisor he was doing a good job was adduced on *direct examination* by plaintiff's lawyer. Levingston also testified on direct examination that Van Gilder told Levingston he (Van Gilder) was grooming Levingston for Van Gilder's position because Van Gilder intended leaving defendant within a year. This testimony, if believed, supported plaintiff. It indicates Levingston's supervisor was pleased with Levingston's work, thereby belying the premise Levingston was discharged because his job performance was unsatisfactory. Levingston's credibility was thus a factor in the trial court's search for the truth regarding Levingston's firing.

In *Sandy Ford Ranch, Inc. v. Dill,* 449 S.W.2d 1, 6[7] (Mo.1970), we are told:

"It has long been the rule in Missouri that on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity or credibility or to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except where the answer

might expose him to a criminal charge. *Chism v. Cowan*, Mo., 425 S.W.2d 942, 948."

Exhibit B and Levingston's testimony about the purported accounting degree demonstrate he lied on his resume. This sheds light on his credibility, as noted in the trial court's findings. The trial court therefore committed no error in receiving Exhibit B in evidence. Plaintiff's second point is denied.

■ Plaintiff's third point maintains the trial court "erroneously declared and applied the law as [defendant] failed to meet its burden to overcome the statutory presumption with clear, cogent, and convincing evidence as required by [§ 454.505.10]." [2]

In seeking to demonstrate Levingston was not discharged because of the wage order, defendant did not rely exclusively on Levingston's testimony about the reasons given at the termination meeting.

Steve Redford, defendant's president at the time Levingston was fired, testified:

"Q Did Impact Management fire Gary Livingston [sic] because of the garnishment or hold order?

A No.

. . . .

Q —Was [Van Gilder] authorized to tell Mr. Livingston [sic] that his termination had nothing to do with the garnishment?

A (Nods head.)

Q He had authority to do that—

A—That's exactly right.

Q And, did he have any authority to say anything else, I mean, about a garnishment? He had no authority to fire someone for a garnishment, did he?

A No."

Plaintiff argues Redford's testimony was not clear, cogent and convincing evidence that Levingston was discharged for a reason other than the wage order.

The scope of our review of this judge-tried case is established by Rule 73.01(c), Missouri Rules of Civil Procedure (1991), as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1]. Credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

While plaintiff may sneer at Redford's testimony, its credibility was for the trial court, not plaintiff, to assess. Redford's testimony that Levingston was not fired because of the wage order was consistent with the explanation given Levingston at the termination meeting, i.e., he was fired because his job performance was unsatisfactory and he made personal phone calls on company time.

We do not reweigh the evidence, but determine only whether there is sufficient evidence to support the trial court's findings after considering the evidence in the light most favorable to the party prevailing below, giving that party the benefit of all reasonable inferences and disregarding the other party's evidence except as it may support the judgment. *Neal v. Sparks*, 773 S.W.2d 481, 485–86[2] (Mo.App.1989); *Morrison v. Jack Simpson Contractor, Inc.*, 748 S.W.2d 716, 718[3] (Mo.App.1988).

The statutory presumption that Levingston was fired as a result of the wage order was rebuttable. Redford's testimony and Levingston's account of the termination meeting contradict plaintiff's claim that Levingston's firing was a result of the order. As observed by the trial court, plaintiff presented no evidence defendant fired Levingston because of the order.

We hold the trial court did not err in finding the evidence sufficient to overcome the statutory presumption. Plaintiff's third point is denied.

Plaintiff's fourth point asserts the trial court committed plain error in allowing defendant's lawyer to (a) continuously demean and harass Levingston, and (b) introduce hearsay by the manner in which he phrased his questions. The "hearsay"

**2.** Footnote 1, *supra*.

identified by plaintiff appears in the cross-examination of Levingston regarding the termination meeting.

In rejecting plaintiff's complaint about Exhibit C in plaintiff's first point, we explained that once plaintiff adduced testimony from Levingston regarding what was said at the termination meeting, defendant had the right to cross-examine Levingston on that subject. Consequently, plaintiff cannot predicate error on the "hearsay" Levingston was asked about on cross-examination.

As to the alleged harassment, we have examined the instances seized upon by plaintiff. While defendant's lawyer conducted some cross-examination of Levingston in freewheeling style, we find no prejudice to plaintiff. No jury was present. It is manifest from the trial court's findings that the court based its judgment on an objective application of the law to the evidence, unswayed by the robust, and occasionally humorous, antics of defendant's lawyer in cross-examining Levingston.

Plaintiff's fourth point is denied and the judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.